Locust-Midcity Club of Philadelphia *v*. Hotel, Motel & Club Employees' Union, Appellant.

Argued April 24, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Alan R. Howe,* with him *Edward Davis,* for appellants.

*Robert H. Kleeb,* with him *E. Jackson Bonney,* and *Morgan, Lewis & Bockius,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 2, 1963:

Appellee Locust-Midcity Club is a private, non-profit social club which operates for its members facilities such as a restaurant, bar, game rooms, barber shop, etc., at its clubhouse in central Philadelphia. Since its formation by consolidation of the Locust Club and the Midcity Club in 1960, appellant labor union has been picketing the premises of the club for recognition as exclusive bargaining agent of the club's employees.[1] Appellee sought and obtained a decree enjoining the picketing of its premises by the union.[2]

Involved in the present factual setting is the prior relationship between appellant union and the former Locust Club. In August, 1956, the union, then representing twelve of nineteen Locust Club employees, made a demand upon that club for recognition as bargaining agent. The club refused the request, nine of its union employees went on strike, and the club discharged those employees, thereby destroying the union's majority. Subsequently, the Locust Club sought to enjoin the picketing which had continued after these discharges,

---

[1] After consolidation of the two clubs, the new organization occupied the quarters of the former Locust Club while new facilities were under construction. Picketing at the construction site was, upon application by the Regional Director of the NLRB, enjoined by the federal district court as an unlawful secondary boycott. Picketing at the new quarters resumed after completion of construction and after the club occupied those facilities.

[2] The Union conceded below that the consolidation was not entered into with the object of defeating the union's rights. This is quite clear on the record, since both clubs had substantial memberships prior to consolidation.

but the relief sought was refused. This Court affirmed the refusal to grant an injunction in *Locust Club v. Hotel and Club Employees' Union*, 397 Pa. 357, 155 A. 2d 27 (1959). We there held that the exclusionary provisions of the Labor Anti-Injunction Act[3] relied upon by the Locust Club were not available to it since the union had represented a majority of employees at the inception of the strike but did not command that status at the time of the injunction proceedings because the employer had unilaterally discharged union members and replaced them with other employees.[4]

At the time of the consolidation of the two clubs, all of the Locust Club's then employees became employees of the Locust-Midcity Club. In this proceeding, thirty-four of the thirty-six current employees appeared and testified that they did not belong to the union and that they had no intention of becoming members in the future. The chancellor found that the Locust-Midcity Club was a new entity, separate and apart from the former Locust Club, and held that the union was unlawfully picketing the club for the purpose of coercing the club to compel its employees to join the union and granted an injunction. The union's

---

[3] Act of June 2, 1937, P. L. 1198, §4(a)-(d), added by Act of June 9, 1939, P. L. 302, §1, 43 P.S. §206d (a)-(d) (1952). Subsection (b) provides that the Act shall not apply "where a majority of the employes have not joined a labor organization, . . . and any labor organization . . . engages in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization."

[4] The discharged employees were not ordered reinstated pursuant to the Pennsylvania Labor Relations Act, June 1, 1937, P. L. 1168, No. 294, as amended, 43 P.S. §§211.1-211-13 (1952). That Act was held not to apply to the Club on authority of *Pennsylvania Labor Relations Board v. Overbrook Golf Club*, 385 Pa. 358, 123 A. 2d 698 (1956).

exceptions to the adjudication were dismissed, and the decree nisi was made absolute.

Appellant union bases its contention of error in the decision of the court below on the ground that its right to picket the Locust Club for recognition had been previously sustained by this Court in *Locust Club v. Hotel and Club Employees' Union,* supra, and that under §809 of the Nonprofit Corporation Law,[5] this right survived the subsequent consolidation of the Locust and Midcity Clubs. Appellant further contends that mere lapse of time (here at least three years) is not sufficient to deprive the union of its right to picket for recognition.

Even assuming (without deciding) that the right to picket a nonprofit social or athletic club survives the consolidation of that club with another, under the facts before the court, the picketing by appellant union was unlawful and was properly enjoined. Although a union may have representative status at one point in its attempt to obtain recognition as bargaining agent, that status does not necessarily continue indefinitely. See *Anchorage, Inc. v. Waiters and Waitresses Union,* 383 Pa. 547, 119 A. 2d 199 (1956). There, this Court affirmed the enjoining of the defendant union from further picketing and said, at page 555, A. 2d at 203: "It is, of course, true that picketing which is lawful does not necessarily become unlawful merely by the extended duration of time during which it may be carried on, but its persistence during such an extraordi-

---

[5] Act of May 5, 1933, P. L. 289, as amended, 15 P.S. §2851-809 (1958). This section provides that "the surviving or new corporation shall be responsible for all the liabilities and obligations of each of the corporations merged or consolidated; but the liabilities of the merging or consolidating corporations . . . shall not be affected, nor shall the rights of the creditors thereof or of any persons dealing with such corporations . . . be impaired by such merger or consolidation . . . ."

nary period is at least an evidential factor pointing inevitably to the conclusion that its real object was the harassment and oppression of the employer and not to carry on for so many years an attempt to induce the employes voluntarily to join the Union, which, if not successful within a reasonably limited period certainly could never succeed at all."

As in the instant case, the union in *Anchorage* continued to picket long after its majority had disappeared, and the union was unable to regain its representative position.

Appellant's contention that its right presently to picket the Locust-Midcity Club was established by the *Locust Club* case, if permitted to prevail, would, in effect, constitute conclusive judicial approval of the right to picket the Locust-Midcity Club without limitation as to duration and irrespective of the type of picketing involved. To so read that determination is to give meaning only to that portion of the holding which permits picketing, without giving consideration to the propriety or impropriety of its use. This was not the ruling in *Locust Club* and such a result may not be supported under the authority of that or any other decision of this Court. To hold otherwise here would be to ignore completely the factual and circumstantial changes which have occurred over the last few years, changes which are required to be recognized by the principle of *Anchorage*. Further, the holding in *Locust Club* was based primarily on the unusual factual situation there existing. The conduct of the employer (in discharging striking employees) was the sole cause of the union's loss of majority status and no statutory remedy was available to reinstate the discharged employees.[6] Unlike the factual setting of the *Locust Club* case, there is not present here any conduct of the em-

---

[6] See note 4, supra.

ployer which has interfered with the representative status of the union.

The findings of the chancellor and of the court en banc are abundantly and adequately supported by the instant record. Without having obtained a single employee as a member over such an extended period of time, the picketing may no longer be regarded as "an attempt to induce the employes voluntarily to join the union." See *Anchorage,* supra. Appellant terms its picketing as "recognitional"—which necessarily implies, under the undisputed facts, that it is to coerce the recognition of a union to which none of the employees belong or desire to belong.

The court below correctly concluded that the real objective of the picketing was harassment of the employer rather than an attempt to organize the employees. The decree of the court below must be affirmed.

Decree affirmed. Costs upon appellants.

Mr. Justice COHEN dissents.