St. Joseph's Hospital, Appellant, vs. Wisconsin Employment Relations Board, Respondent.
[Two cases.]

*June 2—July 3, 1953.*

398

For the appellant there was a brief and oral argument by *Robert S. McCormack* of Milwaukee.

For the respondent there was a brief by the *Attorney General,* and *Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

BROADFOOT, J.  In its complaint the union charged the employer generally with unfair labor practices and specifically with discriminatory discharges of eight employees on March 29 and 30, 1951, and with the discharge on September 6, 1951, of Ernestine Daigle.  The union alleged that Mrs. Daigle was discharged because of her union membership and her position and duties as president of the union.  In its counterclaim the employer charged the union generally with unfair labor practices.  The board found that the union had engaged in unfair labor practices, and there was no petition for a review of that part of its determination.

The representation election was held on March 27, 1951. On March 29th and 30th, eight nonprofessional employees

were discharged. All of them were union members and three of them were officers of the union. One of them was Mrs. Daigle. As a result of negotiations all eight of the employees were advised that they were being reinstated. Six of them, including Mrs. Daigle, did return to work. The board found that the eight employees were discharged because of the closing of one floor of the hospital, due to its poor financial condition, and as a result it was overstaffed with nonprofessional employees. The union did not ask for a review of that finding, probably because it was well supported by the testimony.

The employer contends that findings numbers 16 and 20 are unsupported by substantial evidence in view of the entire record as submitted. Such findings are as follows:

"16. That the statements made by Sister Flavia to Ernestine Daigle, the statements of Fred Law, acting as an agent for the employer, to employees La Rue, Majetich, and Hagene, and the statements made by A. J. Kull, acting as an agent for the employer, to employee Torgeson were statements made for the purpose of discouraging union activities of the employees and constituted interference with the rights of the employees of the employer. . . .

"20. That the discharge of Daigle by the employer was primarily because of her union activities and the acts of misconduct and insubordination were merely used as a pretext by the employer in discharging Daigle. Daigle was discharged by the employer because of her membership in and her activities on behalf of the complainant and by such discharge the employer interfered with the rights of employees and discouraged membership in the complainant union."

As to finding number 16, the employer contends that the statements referred to were made by persons not authorized to represent it in its negotiations with the union. We deem it unnecessary to state the evidence here, but the finding is well supported by the record.

The chief issue at the hearing before the board was the reason for the discharge of Mrs. Daigle on September 6,

1951. The main contention of the employer in the circuit court and upon the appeal here was that finding 20 is unsupported by substantial evidence in view of the entire record. It was the contention of the union that the discharge was discriminatory and was because of her union activities. The employer on the other hand contended that she was insubordinate, acted beyond her authority, and was a troublemaker.

From the evidence adduced by the employer the board found that during the course of her employment at the hospital, which started in 1946, Mrs. Daigle had committed various acts of misconduct and insubordination; that some of these acts were grounds for discharge, but the serious acts of misconduct and insubordination occurred prior to 1951, before Mrs. Daigle became active in the organization of the union; that the employer was aware of Mrs. Daigle's behavior but did not discipline her and increased her wages from time to time; on August 30, 1951, Mrs. Daigle changed her work shift with another nurses aid without obtaining prior consent thereto from the floor supervisor. This was in violation of a hospital rule. Mrs. Daigle, however, testified that a different floor supervisor had approved the practice of changing work hours with other nurses aids. The sister superior at the hospital testified that this matter was reported to her on the same day and she immediately resolved to discharge Mrs. Daigle but before doing so wrote to the attorney for the employer to seek his advice. This was the occasion for the delay until September 6th.

Finding 20 is a finding of ultimate fact and is of necessity based upon inferences from other testimony before the board. Such inferences may not be based upon conjecture but must be drawn from established facts which logically support them. The drawing of inferences from other facts in the record is a function of the board and the weight to be given to those facts is for the board to determine. *International Union v. Wisconsin E. R. Board,* 258 Wis. 481, 46 N. W. (2d) 185.

Such findings, when made, cannot be disturbed by a court unless they are unsupported by substantial evidence in view of the entire record submitted. .

Among other things the record showed the following: That during the first four years of her employment Mrs. Daigle had committed serious acts of misconduct for which she was not disciplined; no written record was made of her infractions of the rules; she received regular wage increases; Mrs. Daigle was discharged on March 29th due to the closing of one of the floors and was reinstated without complaint that her services were unsatisfactory; she was one of the most active employees in the formation of the union and her activities were known to her employer; she was asked by the employer to stop discussing union activities with hospital employees; Mr. Law and Mr. Kull, as agents for the hospital, attempted to stop the formation of the union; Mrs. Daigle was informed by her floor supervisor on August 31st that in the future permission would be required to change shifts but, in view of her explanation, the change on August 30th would be all right; as union president, Mrs. Daigle made an appointment with the sister superior for the afternoon of September 4th to discuss union grievances, including a change in paydays, the installation of a time clock, split hours, and the type of uniforms to be worn by nurses aids, all of which were proper subjects for collective bargaining.

From the entire record the board could find that there existed an antiunion attitude on the part of the employer and that Mrs. Daigle's discharge resulted therefrom. From the record before us the board might have found the other way. Had it done so, we would affirm. Our judgment, however, cannot be substituted for that of the board. The issues here are questions of fact and we have so considered them.

The employer admits that it is subject to the Employment Peace Act because of the decision in *Wisconsin E. R. Board v. Evangelical Deaconess Society*, 242 Wis. 78, 7 N. W. (2d)

590. However, it contends that this case can properly be considered as an equitable action governed by rules of equity and that under its equitable powers the court should consider that the hospital is a charitable institution operated in the interests of the public, and interpret the statute in accordance with its spirit and not in accordance with the letter thereof. It contends, further, that if we act as a court of equity we are not limited strictly to review of the record and the findings of the board, but that we can substitute our own judgment.

Ch. 111, Stats., is a statutory provision for the settlement of labor disputes. The references to the rules prevailing in courts of equity therein refer to hearings before the board. Reviews of determinations of the board are governed by the provisions of ch. 227, and the powers of the court upon review are the same as those governing the review of orders of other state agencies. Any exception therefrom in favor of hospitals can only be made by the legislature. This applies also to the contention of the employer that the trial court, under its equitable powers, could refuse to grant an order enforcing the judgment of the board even if it were valid.

Other contentions of the employer as to errors in procedure and the reception of certain evidence have been reviewed and resolved against the employer. It had a full and complete hearing, the determinations of the board are supported by substantial evidence in view of the entire record as submitted, and its determinations were not arbitrary or capricious.

*By the Court.*—Judgments affirmed.