## Pennsylvania Labor Relations Board *v.* Overbrook Golf Club (et al., Appellant).

Argued May 23, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Louis H. Wilderman*, with him *Richard H. Marko-witz, Paula R. Markowitz*, and *Wilderman & Marko-witz*, for appellant.

*William A. Welsh* and *George W. Alexander, Jr.*, with them *Paul F. Barnes, James F. Wildeman*, Special Deputy Attorney General, *Leon Ehrlich*, Deputy Attorney General, and *Herbert B. Cohen*, Attorney General, for appellees.

OPINION BY MR. JUSTICE JONES, June 25, 1956:

On a complaint to the Pennsylvania Labor Relations Board by the Hotel and Club Employees Union, Local No. 568, AFL, charging the Overbrook Golf Club with an unfair labor practice, the Board dismissed the complaint for lack of jurisdiction. On appeal by the Union from the Board's final order, the Court of Common Pleas No. 3 of Philadelphia County affirmed the action of the Board in an order which is now before us for review on the Union's appeal.

The Golf Club employed, part-time, a waitress in its dining room for a little less than six weeks when she was summarily dismissed. She charged that her dismissal resulted from her participation in organizational activity for the complaining Union of which she was a member in good standing. The waitress's dismissal for the alleged reason assigned by her formed the basis of the Labor Relations Board's complaint, on the Union's charges, that the Golf Club's action constituted an unfair labor practice under Section 6 (1) (a) and (c) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211.1 et seq.

In its answer, the respondent Golf Club averred that "it is a purely non-profit organization, is not conducted for business or profit in any way, and is not engaged in an industrial activity or pursuit of any kind." The Club accordingly denied the jurisdiction of the Labor Relations Board to entertain the complaint and also denied that it had discharged the waitress for her union activity but, on the contrary, averred that she was discharged for just and sufficient cause.

The Board conducted a hearing on the complaint and answer and, thereafter, filed an opinion and a *nisi* order in which it held that it had jurisdiction of the matter and that the respondent was guilty of the un-

fair labor practice charged. The respondent filed exceptions to the opinion and order. After argument thereon, the Board ordered that additional testimony be taken to determine the relative magnitude and character of the business done by the respondent's dining room and bar. On the basis of the testimony adduced at the supplemental hearing the Board filed a decision and final order whereby it revoked its *nisi* order, dismissed the charges and the complaint issued thereon and marked the case "closed" on its records. The final order was based on the Board's conclusion that the Overbrook Golf Club is not an "employer" within the meaning of Section 3, subsection (c), of the Pennsylvania Labor Relations Act for the reason that its operation is neither "industrial" nor "commercial".

The Board based its conclusion on the following findings of fact: "The evidence now discloses that the operation of the bar and the restaurant is primarily for the benefit and enjoyment of the members of the Respondent, and the use thereof by non-members is merely incidental. It appears that all non-member functions must be sponsored and paid for by a member of the Respondent; that the operations of the bar and the resturant (operated at a substantial loss) are essentially private and not commercial or competitive enterprises; that the operation is not industrial; and that the operations are wholly within the scope of its charter as a non-profit country club. As the Respondent is a non-profit corporation, the operations of the bar and the restaurant [are] conducted not essentially for profit but primarily for the pleasure and accommodation of the members of the Respondent . . . ." As the foregoing findings are "supported by substantial and legally credible evidence", they are to be taken as conclusive. Section 9 (b) of the Act expressly so dictates. And, the legitimate inferences to be drawn therefrom

are to be treated likewise: *Pennsylvania Labor Relations Board v. Sansom House Enterprises,* 378 Pa. 385, 391, 106 A. 2d 404; *Pennsylvania Labor Relations Board v. Cadman,* 370 Pa. 1, 2, 87 A. 2d 643; *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.,* 345 Pa. 398, 400, 29 A. 2d 90.

The Board avowedly came to its legal conclusion on the basis of this court's relevant decisions, then consisting of *Western Pennsylvania Hospital v. Lichliter,* 340 Pa. 382, 17 A. 2d 206, and *Salvation Army Case,* 349 Pa. 105, 36 A. 2d 479, to which must now be added *Pennsylvania Labor Relations Board v. Mid-Valley Hospital Association,* 385 Pa. 344, 124 A. 2d 108. A detailed review of the provisions of the Act, and in particular the provisions of Section 2 under the heading "Findings and Policy", led us "irresistibly" in the *Salvation Army Case* to the conclusion that the legislature meant to limit the provisions of the Act to *industrial pursuits* and, therefore, "intended all of the statutory provisions and regulations of the Act to apply exclusively to *industrial* disputes." Hence, the term "employer", as used in the Act, does not embrace a hospital, as in the *Western Pennsylvania Hospital* case, or a charitable or eleemosynary institution, as in the *Salvation Army* case. The appellant does not question the merit of those decisions but asserts that they should be considered as *sui generis,* the hospital being unique in its humane relation to the public and the Salvation Army being a pure charity serving mainly indigents. However, in the *Mid-Valley Hospital Association* case, supra, Mr. Chief Justice STERN, after expressly reaffirming the rationale of the decisions in the *Western Pennsylania Hospital* and *Salvation Army* cases, said that "The basis for the decision [referring to the *Western Pennsylvania Hospital* case] was, in brief, that such hospitals, being non-profit corporations *not*

*engaged in industry, commerce, trade, business or production,* are not within the intendment of the purpose and scope of the Pennsylvania Labor Relations Act" (Emphasis supplied). The opinion further states that "In *Broadwater v. Otto,* 370 Pa. 611, 88 A. 2d 878, the *Salvation Army Case* was referred to (p. 614, A. 2d p. 880) and the statement once more made that the Pennsylvania Labor Relations Act applies exclusively to *industrial* disputes."

Thus, jurisdiction of the Labor Relations Board extends only to disputes between an employer engaged in industry or its equivalent, such as commerce, trade or business, and his employees. The criterion for determining whether an employer is subject to the provisions of the Act would seem to be, more particularly, whether he is engaged in an industrial or commercial activity rather than that he operates it as a non-profit enterprise. In the present instance, it is factually settled beyond controversy that the Overbrook Golf Club is not engaged in an industrial or commercial pursuit. On the contrary, the Board competently found that the Club's serving of food and drink was a strictly private activity conducted for the comfort, convenience and pleasure of the Club's members in their enjoyment of its other concededly non-industrial operations under its charter powers and that, as such, the questioned activity did not constitute an attempt on the part of the Club to invade an industrial or commercial field. Since the Board, a creature of statute, may exercise only such jurisdiction as the General Assembly has conferred upon it (cf. *Pennsylvania Labor Relations Board v. Sansom House Enterprises, Inc.,* supra, at p. 395), it follows that the Board properly declined to assume jurisdiction of the complaint in the instant case.

It is interesting to note that in its final decision the Board recognized that it "has repeatedly held that [it is] without jurisdiction over the maintenance employees of a non-profit social club", citing *Youghiogheny Country Club's Employes Case,* No. 85 (1946), and *Royal Order of Moose's Employes Case,* No. 238 (1950). The Board further noted that, in the one case where it did take jurisdiction of a complaint against a social club (*Pennsylvania Labor Relations Board v. Melodee Club, Inc.,* No. 19 (1952)), it was "under facts, not applicable to the instant case."

We need spend no time in discussing the appellant's further argument based on decisions, contrary to our own, from other jurisdictions. The seeming conflict has twice before been urged upon us in similar situations (see *Salvation Army* case and *Mid-Valley Hospital* case, supra) and each time the contention was flatly rejected with the observation, in passing, that our construction of the Act has had implied legislative approval over a considerable period of years.

Order affirmed at the appellant's costs.

Mr. Justice MUSMANNO dissents.