Brownsville General Hospital, Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellee, and Pennsylvania Nurses Association, Intervening Appellee.
Pennsylvania Labor Relations Board, Petitioner, *v.* Brownsville General Hospital, Respondent.

Argued May 10, 1974, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate. Reargued June 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Thomas A. Beckley,* with him *Beckley & Grove,* for appellant.

*Raymond W. Cromer,* with him *James F. Wildeman* and *James L. Crawford,* for appellee.

*Kent H. Patterson,* with him *Cleckner and Fearen,* for intervening appellee.

*Jerome H. Gerber,* with him *Handler, Gerber and Weinstock,* for amicus curiae, Pennsylvania State AFL-CIO.

OPINION BY JUDGE CRUMLISH, JR., October 1, 1974:

The important question raised by this appeal is whether or not a private, non-profit hospital participating in federal and state medical assistance programs and the past recipient of federal plant construction matching funds, is a "public employer" within the meaning of Section 301(1) of the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, 43 P.S. §1101.301

(1), (Act 195), and therefore subject to the jurisdiction of the Pennsylvania Labor Relations Board.

A petition for representation was filed with the Pennsylvania Labor Relations Board (Board) on December 6, 1971 by the Office and Professional Employees, International Union, AFL-CIO (OPEIU), seeking recognition as the collective bargaining agent for all professional and non-professional employes of Brownsville General Hospital (Hospital), Brownsville, Pennsylvania. Upon the motion of the Pennsylvania Nurses Association (PNA), alleging that it represented a majority of the registered and licensed practical nurses employed by Hospital, PNA was thereafter permitted to intervene in the representation proceedings. On January 21, 1972, Hospital filed a motion to dismiss the petition for a lack of jurisdiction claiming that it was not a "public employer" within the meaning of Section 301(1) of Act 195. At a hearing held before a trial examiner on February 17, 1972, Hospital stipulated that it is a non-profit corporation, and all parties stipulated to the accuracy of the following financial data relative to Hospital's fiscal year ending June 30, 1971, its first fiscal year during which Act 195 became effective.[1] Hospital had an approximate income from operations of $2,391,000.00; of that amount, $764,681.00 was composed of Federal Medicare payments, and $312,714.00 in Pennsylvania Medical Assistance payments;[2] and $1,000.00 was received from Fayette County "as partial

---

[1] Section 2301, 43 P.S. §1101.2301.

[2] We note that the Board in Finding of Fact No. 1 of its Order and Notice of Pre-election Conference, which was incorporated by reference into each nisi order of certification, found that Hospital "received during 1971 $764,681.00 under the State's Welfare and Medical Assistance Programs." Our reading of the record, however, confirms that $764,681.00 was received for Federal Medicare payments, while $312,714.00 was paid by the State under the Welfare and Medical Assistance Programs.

reimbursement by the County for the care of County Home patients." The parties also agreed that Hospital received a construction grant of $1,800,000.00 in 1965 under the Federal Accelerated Work Program, which constituted seventy-five percent (75%) of the eligible cost of constructing the Hospital.

The Board issued an Order and Notice of Pre-election Conference on June 27, 1972, wherein it determined that Hospital was a public employer under Act 195, and set a date for a pre-election conference. Hospital filed a petition for review of this order on August 25, 1972 with the Court of Common Pleas of Fayette County, which stayed proceedings. That order was superseded by this Court as premature, and a representation election was held at the Hospital on September 20, 1972. Pursuant to the results of that election, the Board issued a Nisi Order of Certification on September 26, 1972, certifying PNA as exclusive bargaining representative of all professional employees of the Hospital (registered nurses), and OPEIU as exclusive bargaining representative of all non-professional employees of the Hospital.

Hospital filed exceptions to the conduct of this election and the Nisi Order, which were sustained by the Board and a second election was scheduled for December 18, 1972. A majority of the professional employees and non-professional employees again selected PNA and OPEIU, respectively, as their bargaining representative, and a second Nisi Order of Certification was accordingly issued by the Board on January 5, 1973. Hospital filed exceptions to this Order which were dismissed and a final order was entered by the Board on January 24, 1973. A petition for review of this final order was filed in the Court of Common Pleas of Fayette County by Hospital on January 29, 1973 pursuant to Section 1502 of Act 195, 43 P.S. §1101.1502. From the lower court's affirmance of the order, Hospital has appealed to this

Court. The primary question of the Board's jurisdiction over Hospital is now properly before the Court.

A "public employer" is defined by Section 301(1) of Act 195 as: ". . . the Commonwealth of Pennsylvania, its political subdivisions including school districts, and any officer, board, commission, agency, authority, or other instrumentality thereof *and any* nonprofit organization or institution *and any* charitable, religious, scientific, literary, recreational, health, educational or welfare institution receiving grants or appropriations from local, State or Federal governments but shall not include employers covered or presently subject to coverage under the act of June 1, 1937 (P. L. 1168), as amended, known as the 'Pennsylvania Labor Relations Act,' the act of July 5, 1935, Public Law 198, 74th Congress, as amended, known as the 'National Labor Relations Act.' " (Emphasis supplied.) 43 P.S. §1101.301(1).

By focusing upon the conjunctive phrases "and any," emphasized above, the Board contends that this definition sets up three distinct categories of entities which are public employers for purposes of Act 195: (1) The Commonwealth, its political subdivisions, and instrumentalities thereof; (2) non-profit organizations and institutions, irrespective of whether or not they receive governmental grants or appropriations; and (3) charitable, religious, scientific, literary, recreational, health, educational or welfare institutions receiving grants or appropriations from local, State or Federal governments. It is submitted that since Hospital has stipulated that it is a non-profit corporation it clearly falls within the second definitional category of public employer. Although we recognize that this construction is enhanced by reference to the Title of Act 195 which defines "public employes to include employes of nonprofit organizations and institutions" without mention of the receipt of grants or appropriations by such entities, to adopt such a construction would necessitate

reaching what we believe to be the unintended result of encompassing many private employers who have chosen the non-profit form of conducting their business and who receive no governmental support. As applied to private non-profit hospitals, we think it is clear that the Legislature intended such hospitals to be public employers only if they are receiving grants or appropriations from the delineated governmental bodies by specifically including "health" institutions in the third category suggested by appellees.

Is the Hospital, as a non-profit health institution, "receiving grants or appropriations from local, State or Federal governments"? Act 195 nowhere defines the terms "grants" and "appropriations," and therefore these words must be construed consistent with their common and approved usage, unless they have acquired a peculiar or technical meaning appropriate to the context in which they are used. The Statutory Construction Act of 1972, Act of December 6, 1972 (Act No. 290), 1 Pa. S. §1903(a). "The word 'appropriation', when used in the constitutional or legislative sense... means a designation of money raised by taxation to be withdrawn from the public treasury for a specifically designated purpose." *Commonwealth v. Perkins*, 342 Pa. 529, 532, 21 A. 2d 45, 48, *aff'd per curiam*, 314 U.S. 586 (1942). This broad definition, however, was given a limited construction in *Schade v. Allegheny County Institution*, 386 Pa. 507, 126 A. 2d 911 (1956) in the context of "appropriations" for "charitable, educational or benevolent purposes to any person or sectarian institution" then prohibited by Article III, Section 18 of the Pennsylvania Constitution. The Court in *Schade* held that payments to sectarian organizations for the care and support of delinquent children were not appropriations within the constitutional prohibition, but reimbursements for services rendered on behalf of the state: "The cost of the maintenance of neglected chil-

dren either by the State or the County is neither a charity nor a benevolence, but a governmental duty. All the plaintiffs proved was that the monies received by the defendant institutions were in *partial reimbursement* for the cost of room and board for such minors. The services had been rendered before partial payment on account of same was received. A considerable part of this money is recouped by the Juvenile Court from the parents of these minor wards. *The balance of the funds so expended are, in legal effect, payments to the child,—not the institution supporting and maintaining him or her.*" (Emphasis added.) 386 Pa. at 512, 126 A. 2d at 914.

This distinction between a direct appropriation for a non-profit organization's own use and a reimbursement for services rendered, which is in effect an appropriation to the individual for whom such services have been rendered, was also recognized in *Beth Jacob Schools of Philadelphia v. Labor Relations Board,* 8 Pa. Commonwealth Ct. 343, 301 A. 2d 715 (1973), in the context of "grants or appropriations" as used in Section 301(1) of Act 195. The Board in *Beth Jacob* asserted jurisdiction over a non-profit, sectarian school on the basis of $50,000.00 received by the school under a Federal school lunch program which the Board claimed amounted to the acceptance of a Federal grant or appropriation. This Court, per Judge ROGERS, held to the contrary inasmuch as the state disbursement of Federal funds to schools participating in the program was limited to a *reimbursement* of the cost of foods consumed by the school's students.

Applying this construction to the Federal Medicare and Pennsylvania Medical Assistance received by the Hospital, we must also conclude that these payments were reimbursements for services rendered by the Hospital, and not grants or appropriations to the Hospital itself but to its patients eligible for medical assistance.

The monies received by the Hospital for the fiscal year ending June 30, 1971 from Pennsylvania were paid to it under the Public Welfare Code, Act of June 13, 1967, P. L. 31, *as amended,* 62 P.S. §401 *et seq.* The purpose of this medical assistance is "to promote the welfare and happiness of all the people of the Commonwealth, *by providing public assistance to all of its needy and distressed*" (Section 401, 62 P.S. §401).[3] "Assistance" is defined as "money . . . and health care . . . provided from or with State, Federal, County . . . funds *for needy persons who reside in Pennsylvania . . . .*" (Section 402, 62 P.S. §402). The limits of this assistance are established by Section 443.1, 62 P.S. §443.1, which was previously titled "Purchased hospital care," as follows: "The following medical assistance payments shall be made *in behalf of* eligible persons whose institutional care is prescribed by physicians: "(1) The reasonable cost of in-patient hospital care . . . for a maximum of sixty days in a benefit period for a bed patient on a continuous twenty-four hour a day basis in a multi-bed accommodation of a hospital . . . ." Organizations, or agencies, participating in the medical assistance program are termed "vendors of services" by Section 444.1, 62 P.S. §444.1, which requires such an organization as Hospital to conform to the rates authorized by the Act.[4]

---

[3] Emphasis supplied throughout unless otherwise indicated.

[4] The Pennsylvania Medical Assistance program must conform with the eligibility and benefits standards of the Social Security Act, 79 Stat. 343, 42 U.S.C. §1396 *et seq.* in order for the state to be eligible for Federal Medicaid appropriations. As a review of these federal standards does not alter the express legislative intent that these payments constitute appropriations to the medically needy and reimbursement for the cost of health services rendered the participating "vendors of services," the federal provisions need not be reiterated here.

The so-called "Medicare" payments received by the Hospital under Title XVIII of the Social Security Act, 79 Stat. 291, 42 U.S. U.S.C. §1395 *et seq.,* are similarly reimbursements to "providers of

Notwithstanding the above, Appellees contend that these medical assistance payments are "appropriations" as the term was used in *Western Pennsylvania Hospital v. Lichliter*, 340 Pa. 382, 17 A. 2d 206 (1941). In *Lichliter*, our Supreme Court held that public charitable hospitals receiving appropriations from the state for the medical care of indigent patients were not covered by the Pennsylvania Labor Relations Act[5] (PLRA) because they performed a governmental function and therefore came within the exclusion from the statutory definition of employer as "the Commonwealth, or any political subdivision thereof."[6] It is argued that if the funds received by the hospitals in *Lichliter* for the care of indigent patients constituted "appropriations," *a fortiori*, the funds received by Hospital in the instant case amount to "appropriations" as the term was intended by Section 301(1) of Act 195. Although initially appealing, the difficulty with this argument is that at the time *Lichliter* was decided, the Legislature made specific appropriations of fixed dollar amounts to eligible hospitals—including Brownsville General Hospital—to defray the cost of patient care as the particular designated hospital saw fit.[7] As our prior discussion of the present statutory scheme has indicated, participating hospitals are now reimbursed for the reasonable cost of in-patient care, and any appropriation is deemed to be on behalf of the individual recipient.

Appellees next contend that the acceptance of a $1,800,000 federal construction grant by the Hospital

---

services" for the care of eligible individuals participating in a hospital cost insurance plan. "(T)he benefits provided to an individual by the insurance program under this part shall consist of entitlement to have payment made *on his behalf* . . . ." (42 U.S.C. §1395 (a)).

[5] Act of June 1, 1937, P. L. 1168, 43 P.S. §211.1 *et seq.*

[6] *Id.*, Section 3(c), 43 P.S. §211.3.

[7] *See* Appropriations Act of 1939, No. 58-A.

in 1965 brings it within the purview of Act 195 although received well before its effective date. The use of the verb "receiving" in the present tense in Section 301(1) evidences a clear legislative intent that the definitional qualification of a "public employer" under Act 195 be limited to prospective application. Admitting this, Appellees argue that Hospital continues to receive the "benefits" of this grant, and thus "an Act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date." *Creighan v. Pittsburgh*, 389 Pa. 569, 575, 132 A. 2d 867, 871 (1957). *See also Commonwealth v. Barnes & Tucker Co.*, 455 Pa. 392, 319 A. 2d 871 (1974). Although we have no difficulty with this theory of imposing statutory duties or obligations as a matter of law, there is simply no evidence in the record which would support a finding that the Hospital continues to enjoy the "benefits" of the 1965 grant. To the contrary, there is testimony to the effect that the Hospital annually absorbs a considerable loss for its care of patients receiving Medical Assistance and Medicare, above and beyond the reimbursements received by the Hospital under these programs. It is quite conceivable that the "benefits" accruing to the Hospital from its continued utilization of its federally financed buildings has long since been offset by the deficits it has incurred to participants in the federal and state medical assistance programs.

Nor can the Board's jurisdiction over Hospital be based alone upon its receipt of $1,000.00 from Fayette County. Although this money may well also be a reimbursement rather than a grant or appropriation, the record here does not detail its purpose or the structure of its funding. Even were we to assume that it amounted to a "grant" or "appropriation," however, it must be considered *de minimis* and insufficient as a jurisdiction-

al base. *Beth Jacob Schools of Philadelphia v. Labor Relations Board, supra.*

Finally, Appellees contend that it would be inconsistent with the holding of *Western Pennsylvania v. Lichliter, supra,* to now hold that Hospital is not a "public employer" and not subject to either the PLRA or Act 195. Although we are cognizant of this result, our inquiry here is limited to whether the Hospital is a public employer as defined by Section 301(1). Our holding that a *non-profit health institution* not receiving governmental grants or appropriations as so defined herein is not a public employer does not preclude other hospitals receiving such funds from being covered by Act 195.

Reversed.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. Section 301(1) of the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, 43 P.S. §1101.301(1) defines "public employer" as, *inter alia,* "any nonprofit organization or institution." These are clear, unequivocal, and unambiguous words. The Brownsville General Hospital stipulated that it is a nonprofit corporation. Accordingly, I would find that it comes within the Section 301(1) definition of "public employer."

The majority states that to adopt such a construction "would necessitate reaching what we believe to be the unintended result of encompassing many private employers who have chosen the nonprofit form of conducting their business and who receive no governmental support." I do not believe that we can interpret clear and unambiguous words of the Legislature in terms of "what we believe to be the unintended result." If the Legislature did not intend what it so explicitly stated, it *is*

free to make a change by amendment. I would prefer to believe that the Legislature meant what it said and, therefore, would affirm.

---

DISSENTING OPINION BY JUDGE WILKINSON:

I respectfully dissent. I do not believe it is necessary in this case to go as far as my brother MENCER goes in his dissent to say that any nonprofit organization or institution is within the definition of "public employer" within the meaning of Section 301(1) of the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, 43 P.S. §1101.301(1). Rather, I would hold that appellant is within the definition of the same Section, since it is a "charitable, religious, scientific, literary, recreational, health, educational or welfare institution receiving grants or appropriations from local, State or Federal governments."

It is clear from the record that appellant in 1965 received $1,800,000.00 from the Federal government to construct buildings which it presently occupies. It is equally clear that the appropriations or payments it receives currently from the State of Pennsylvania are based in part on the value of these buildings. In my opinion, a nonprofit charitable organization that continues currently to receive substantial benefits from substantial appropriations of local, State or Federal funds cannot avoid the definition of public employer by disclaiming any direct appropriation during the current period. If it would divest itself of its previous classification as a public employer within the meaning of the Act, it must, at the same time, divest itself of the benefits it had previously received and is currently receiving.

Judge ROGERS joins in this dissent.