432 A.2d 189

In The Matter of the EMPLOYEES OF STUDENT SERVICES, INC., Edinboro State College, Edinboro, Pennsylvania.

Appeal of RETAIL STORE EMPLOYEES UNION, LOCAL 880 (Formerly 1538) at No. 186.

Appeal of PENNSYLVANIA LABOR RELATIONS BOARD at No. 187.

Supreme Court of Pennsylvania.

Argued and Submitted March 5, 1981.

Decided July 10, 1981.

Christopher Lepore, Cooper, Lepore & Dreeland, Pittsburgh, for appellant in No. 186.

James L. Crawford, Mary Teresa Gavigan, Asst. Attys. Gen., Pa. Labor Relations Board, Harrisburg, for appellant in No. 187.

Angelo P. Arduini, Shamp, Levin, Arduini & Hain, Erie, for Student Services.

Daniel W. Cooper, Cooper, Lepore & Dreeland, Pittsburgh, for Retail Clerks Local 1538.

## OPINION

NIX, Justice.

The Retail Clerks' Union and the Pennsylvania Labor Relations Board are appealing an order of the Commonwealth Court, 49 Pa.Cmwlth. 220, 411 A.2d 569 which reversed an order of the Pennsylvania Labor Relations Board certifying the Union as the bargaining representative of the employees of Student Services, Inc. located on the grounds of Edinboro State College. The Board's order was affirmed by the Court of Common Pleas of Erie County.

The important question before us is whether the Commonwealth Court correctly concluded that for a non-profit organization to come within Section 301(1) of the Public Employee Relations Act (PERA),[1] the non-profit organization must receive "grants or appropriations from local, State or Federal governments."

Student Services, Inc., the employer in the instant case, is a non-profit corporation organized under the laws of Pennsylvania with its only place of business at Edinboro State College. It operates exclusively for the college in providing services for students not offered by the college itself. Appellee-employer occupies buildings owned by the Commonwealth in which it conducts business ventures, including a book store, art store, bowling alley with pool tables and pinball machines, a duplicating service and vending machines. It also leases the food services in the student union to an outside concern. No rent is paid to the Commonwealth for the use of the facilities.

1. Public Employe Relations Act, Act of July 23, 1970, P.L. 563, No. 195, art. 1, § 101, 43 P.S. § 1101.101 *et seq.* (Supp.1980–81).

A petition for representation was filed with the Pennsylvania Labor Relations Board (Board) by the Retail Clerks International Association, Local 1538, AFL–CIO seeking to represent certain employees of Student Services, Inc. On May 19, 1975, the Board ordered pre-election conferences to be held on June 17, 1975.

The employer filed an appeal from the Board's pre-election conference order in the Court of Common Pleas of Erie County. A stay of all proceedings was granted by the Court of Common Pleas of Erie County which later dismissed the appeal. Following the pre-election conference, held on September 23, 1975, the Board issued an Order and Notice of Election setting forth the time and place for the election. Following the March 4, 1976 election the Board issued a *nisi* order certifying the Union as the exclusive bargaining representative. The employer's exceptions to the certification were dismissed by the Board in a final order dated August 5, 1976.

Under the Pennsylvania Labor Relations Act (PLRA) which was passed in 1937,[2] this Court, after studying the findings and policy under 43 P.S. § 211.1, concluded that the legislature intended the provisions of the Act to apply exclusively to industrial disputes. *Salvation Army Case*, 349 Pa. 105, 36 A.2d 479 (1944). In reaching that conclusion, the Court did not give significance to § 211.3(c)[3] which did not exclude non-profit employers. Also, § 211.3(d)[4] did not

**2.** Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, No. 294, § 1, 43 P.S. § 211.1 *et seq.*

**3.** 43 P.S. § 211.3(c):
  (c) The term "employer" includes any person acting directly or indirectly, in the interest of an employer, but shall not include the United States or the Commonwealth, or any political subdivision thereof, or any municipal authority, or any person subject to the Federal Railway Labor Act or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

**4.** The term "employed" shall include any employe, and shall not be limited to the employes of a particular employer, unless the act explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any

exclude as a group non-profit employees. The Court, applying Section 211.2, *Findings and Policy*, said, "The phrases: 'within and between industries', 'sweat shops,' 'production and consumption,' 'business depressions' and 'industrial strife and unrest' certainly do not relate to charitable or eleemosynary associations." *Salvation Army Case, supra*, 349 Pa. at 110, 36 A.2d at 481. Yet the Court was emphatic that it did ". . . not mean to decide or imply that whenever a non-profit organization does enter an industrial field, even though its profits may be devoted to charity, it is exempted from the taxes and regulations such as the Labor Relations Act to which any other industry or business is subjected." *Id.*, 349 Pa. at 110, 36 A.2d at 481.

Subsequent decisions, while finding the Pennsylvania Labor Relations Act inapplicable to certain non-profit employers, varied the criteria for determining whether a non-profit employer is subject to the PLRA and decided the issue of PLRA applicability on a case-by-case basis. In *Pennsylvania Labor Relations Board v. Mid-Valley Hospital*, 385 Pa. 344, 124 A.2d 108 (1956) a controversy regarding the discharge of an employee of a non-profit charitable hospital was held not to be a labor dispute under the PLRA, *citing Salvation Army Case* as holding "the Act related exclusively to industrial disputes and not to non-profit, charitable organizations."[5] However, in *Pennsylvania Relations v. Overbrook Golf Club*, 385 Pa. 358, 123 A.2d 698 (1956) this Court broadened the criteria used in determining whether the employer in that case came within the jurisdiction of the PLRB by 1) adding the disjunctive "or commercial" to the former criteria of "industrial," 2) emphasizing the "commer-

current labor dispute, or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any person in the home of such person, or any individual employed by his parent or spouse.

5. In both *Salvation Army* and *Mid-Valley Hospital* reference was made to the fact that other jurisdictions have a more encompassing coverage of labor under their labor relations acts than Pennsylvania.

cial" criteria and 3) shifting the focus away from the non-profit element.

The criterion for determining whether an employer is subject to the provisions of the Act would seem to be, more particularly, whether he is engaged in an industrial or commercial activity rather than that he operates it as a non-profit enterprise. In the present instance, it is factually settled beyond controversy that the Overbrook Golf Club is not engaged in an industrial or commercial pursuit. On the contrary, the Board competently found that the Club's serving of food and drink was a strictly private activity conducted for the comfort, convenience and pleasure of the Club's members in their enjoyment of its other concededly nonindustrial operations under its charter powers and that, as such, the questioned activity did not constitute an attempt on the part of the Club to invade an industrial or commercial field.

*   *   *   *   *   *

It is interesting to note that in its final decision the Board recognized that it "has repeatedly held that [it is] without jurisdiction over the maintenance employees of a non-profit social club", citing *Youghiogheny Country Club's Employees Case*, No. 85 (1946), and *Royal Order of Moose's Employes Case*, No. 238 (1950). The Board further noted that, in the one case where it did take jurisdiction of a complaint against a social club (*Pennsylvania Labor Relations Board v. Melodee Club, Inc.*, No. 19 (1952), it was "under facts, not applicable to the instant case." *Id.*, 385 Pa. at 363–64, 123 A.2d at 700.

Thus, Pennsylvania through Court interpretation maintained a relatively narrow approach to the jurisdiction of its labor relations board, and resisted the contrary views of other jurisdictions. *Pa. L.R.B. v. Mid-Valley Hosp. Ass'n, supra*, citing as contra views *Northwestern Hospital v. Public Building Service Employes' Union, Local No. 113*, 208 Minn. 389, 294 N.W. 215; *Utah Labor Relations Board v. Utah Valley Hospital*, 120 Utah 463, 235 P.2d 520; *Wisconsin Employment Relations Board v. Evangelical Deaconess Soci-*

*ety,* 242 Wis. 78, 7 N.W.2d 590; *St. Joseph's Hospital v. Wisconsin Employment Relations Board,* 264 Wis. 396, 59 N.W.2d 448; *National Labor Relations Board v. Central Dispensary of Emergency Hospital,* 145 F.2d 852 (D.C.Cir. 1944).[6] It was within this context that the legislature enacted PERA and Act No. 111.[7] Those acts specifically broadened the scope of collective bargaining into areas where such bargaining had not existed previously and consequently, enlarged the jurisdiction of the Board.

We now turn to an examination of the Board's jurisdiction from the point of view of the General Assembly's intent. Of course our examination must seek to ascertain and effectuate the true intent of the legislature. Statutory Construction Act of 1972.[8] We cannot disregard clear and unambiguous language under the pretext of pursuing its spirit. But we may look to legislative history when the words of the statute are not explicit. Statutory Construction Act of 1972, 1 Pa. C.S.A. § 1921(c); *Hellertown Manufacturing Co. v. Commonwealth,* 480 Pa. 358, 365, 390 A.2d 732 (1978); *cf. Martin Estate,* 365 Pa. 280, 74 A.2d 120 (1950); *Salvation Army Case, supra.*

Section 301(1) of PERA explicitly brings a non-profit organization regardless of its activity within its purview.

(1) "Public employer" means the Commonwealth of Pennsylvania, its political subdivisions including school districts and any officer, board, commission, agency, authority or other instrumentality thereof, *and any* non-profit organization or institution *and any* charitable religious, scientific, literary, recreational, health, educational or welfare institution receiving grants or appropriations from local, state or federal governments but shall not include employers covered or presently subject to coverage under the Act

6. *See also Salvation Army* and *Overbrook Golf Club, supra,* and n. 5 *infra.*

7. Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. §§ 217.1–217.10 (Supp. 1980–81).

8. Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa. C.S.A. § 1921(a) (Suppl.1980–81).

of June 1, 1937 (P.L. 1168), as amended, known as the 'Pennsylvania Labor Relations Act,' the Act of July 5, 1935, Public Law 198, 74th Congress, as amended, known as the 'National Labor Relations Act.' (Footnotes omitted). (Emphasis added). 43 P.S. § 1101.301(1).

The definition of "public employer" is set forth in three distinct phrases separated by the words "and any." The first phrase covers the Commonwealth of Pennsylvania and its political subdivisions. The second phrase preceded by "and any," covers non-profit organizations or institutions. The third phrase, preceded by "and any" relates to charitable, religious, scientific, literary, recreational, health, educational or welfare institutions receiving grants or appropriations from local, state or federal governments. The latter phrase requires two criteria: 1) the employer must be an institution engaged in one of the enumerated activities and 2) must be a recipient of "grants or appropriations." The second phrase requires only one criterion. The employer must be a non-profit organization or institution.

We first note that the second category does not involve a corporate concept since the act does not speak in terms of a non-profit corporation. Rather, the act in stating "non-profit organization or institution" directs our attention to the non-profit *element* of the activity of the employer. This evidences a strong legislative intent to extend the Board's jurisdiction over those non-profit ventures that were excluded by court interpretation from the purview of the PLRA.

█ Student Services, Inc. is an employer whose commercial activities are non-profit. Yet it would have us find that the dual criteria set forth in the third phrase in the definition of "public employer" are applicable here. This contention will not stand. Student Services, Inc. is neither a charitable, religious, scientific, literary, recreational, health, educational or welfare *institution.* While an argument might be made that Student Services, Inc. provides some recreational facilities, under no circumstances could it be

classified as an institution.[9]  Thus we find that the third phrase in the definition is inapplicable to Student Services, Inc. and that Student Services, Inc. is a *non-profit organization* under the second phrase of the definition of "public employer" in Section 301(1) of PERA.

The Commonwealth Court, at the urging of appellee, found that this case turned on the holding of *Brownsville General Hospital v. Pa. Labor Relations Brd.*, 15 Pa.Cmwlth. 428, 325 A.2d 662 (1974).  It is true that the Commonwealth Court in *Brownsville* also utilized the conjunctive character of Section 301(1) of PERA, and it properly found the Brownsville General Hospital to be governed by the third phrase of Section 301(1) and limited its holding to "non-profit health institutions not receiving governmental grants or appropriations as so defined herein." *Id.*, 15 Pa.Cmwlth. at 439, 325 A.2d at 668.

Although we have no quarrel with the ultimate holding in *Brownsville,* there is language in that opinion which we believe to be erroneous.[10]  It is the Commonwealth Court's present reliance upon that erroneous dicta that causes us to disagree with the result they reach here.  The Commonwealth Court in *Brownsville* concluded that the words of limitation "receiving grants or appropriations" modified both the second and third phrases of Section 301(1).  The stated reason for this conclusion:

Although we recognize that this construction is enhanced by reference to the Title of Act 195 which defines

**9.**  The brief of appellee, Student Services, Inc. p. 11, refers to itself as an organization: "Further, the Business *Organization* of Student Services, Inc., is stipulated to as a Non-Profit Corporation organized under the Laws of the Commonwealth of Pennsylvania."

**10.**  A request for review by this Court was made and granted in *Brownsville.*  During the pendency of that appeal before this Court, the United States Congress amended the National Labor Relations Act in such a manner as to bring Brownsville General Hospital within the jurisdiction of the National Labor Relations Board.  *See* National Labor Relations Act, 29 U.S.C.A. § 151 *et seq.*  Thus on October 30, 1975, this Court dismissed the appeal as moot.  *In the Matter of Employees of Brownsville General Hospital*, 464 Pa. 151, 346 A.2d 260 (1975).

'public employes to include employes of non-profit organizations and institutions' without mention of the receipt of grants or appropriations by such entities, to adopt such a construction would necessitate reaching what we believe to be the unintended result of encompassing many private employers who have chosen the non-profit form of conducting their business and who receive no governmental support.

*Id.,* 15 Pa.Cmwlth. at 433–34, 325 A.2d at 665.

The explanation for reaching a result obviously at variance with the language of the section under scrutiny and inconsistent with the clear scheme of the Act as a whole, represents a judicial attempt to substitute its judgment of policy for that which the legislature has clearly made. Such a practice has been repeatedly condemned. *Commonwealth v. Pope,* 455 Pa. 384, 317 A.2d 887 (1974); *Commonwealth v. Rieck Investment Corp.,* 419 Pa. 52, 213 A.2d 277 (1965); *Calvert Distillers Corp. v. Board of Finance & Revenue,* 376 Pa. 476, 103 A.2d 668 (1954); *Commonwealth v. One 1939 Cadillac Sedan,* 158 Pa.Super. 392, 45 A.2d 406 (1946).

As noted earlier, the three phrases of the section were set in the conjunctive and the words of limitation were placed only within the third phrase, thus modifying only that phrase. It is also clear that this cannot be discounted as a grammatical lapse on the part of the General Assembly but, rather, was a deliberate and accurate expression of their intention. For illustration, if we were to accept the *Brownsville* reasoning, we must conclude that the words of limitation apply also to the first phrase. This would lead to the anomalous conclusion that any governmental agency which was self-sustaining and did not require "grants or appropriations" for its existence and operation would be excluded from the provisions of PERA, and their employees regardless of the size of the workforce or the nature of the operation would be denied the benefits of collective bargaining. An example would be the Turnpike Commission which receives no funds from the Commonwealth and operates from tolls received from use of its facility, would not be an

employer and its employees not entitled to the benefits of PERA. Such a result would be irreconcilable with the stated policy PERA was enacted to address.[11]

■ Moreover, such a construction is clearly violative of the fundamental rules of statutory construction. Whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage. *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979); *Masland v. Bachman*, 473 Pa. 280, 374 A.2d 517 (1977); *Daly v. Hemphill*, 411 Pa. 263, 191 A.2d 835 (1963); *Commonwealth v. Hill*, 236 Pa.Super. 572, 346 A.2d 314 (1975) affirmed in part, vacated in part, 481 Pa. 37, 391 A.2d 1303. The clear language of the Act is not to be ignored on the pretext of seeking its spirit. Statutory Construction Act of 1972, 1 Pa. C.S.A. § 1921(b); *Calvert Distillers Corp. v. Board of Finance & Revenue, supra; Salvation Army Case, supra.*

The reading appellees would have us give to section 301(1) would render meaningless the entire third phrase. According to appellees' analysis we would be required to find that not only those institutions specifically delineated in phrase

11.  43 P.S. § 1101.101 Public policy
     The General Assembly of the Commonwealth of Pennsylvania declares that it is the public policy of this Commonwealth and the purpose of this act to promote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare. Unresolved disputes between the public employer and its employes are injuries to the public and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. Within the limitations imposed upon the governmental processes by these rights of the public at large and recognizing that harmonious relationships are required between the public employer and its employes, the General Assembly has determined that the overall policy may best be accomplished by (1) granting to public employes the right to organize and choose freely their representatives; (2) requiring public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining; and (3) establishing procedures to provide for the protection of the rights of the public employe the public employer and the public at large. 1970, July 23, P.L. 563, No. 195, art. I, § 101.

three were controlled by the words of limitation, i. e., "receiving grants or appropriations," but also that "institution" when used in phrase two had the same limitation. Thus if all institutions were intended to be so limited, there would be no purpose served for listing the enumerated institutions in phrase three. As we construe the section, each of the provisions have meaning and that meaning is not inconsistent with the stated public policy of the Act.[12] The underlying premise of PERA is that the collective bargaining process provides the best means for assuring harmony and productivity in the labor relations area. *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975). Drawing from the experience in the private sector, the General Assembly determined that the benefits of this process should be provided to the public sector, with allowances being made for those inherent differences that exist between the objectives of the private and the public sectors. *Id.*, 461 Pa. at 499–500, 337 A.2d at 264–65.[13]

█ Thus it is our view that the first and second phrases of section 301(1) are not limited by the words of limitation "grants or appropriations." It is also our position that appellee falls within the terms of the second phrase. Thus the Commonwealth Court's discussion with reference to whether or not the benefits provided to the instant employer constituted "a grant or appropriation" was misplaced.

The Order of the Commonwealth Court is reversed and the cause is remanded.[14]

KAUFFMAN, J., filed a concurring opinion in which FLAHERTY, J., joined.

12. Phrase three is intended to limit phrase two insofar as the specified institutions enumerated in phrase three are only to be included where it is established that they have received "grants or appropriations."

13. *Collective Bargaining by Policemen or Firemen*, Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. § 217.1–217.10 (Supp. 1980–81).

14. Before the Commonwealth Court, appellee raised additional objections to the Board's jurisdiction and the propriety of the representa-

KAUFFMAN, Justice, concurring.

While I agree with the result reached by the majority, I cannot subscribe to the view that all non-profit organizations are public employers within the meaning of Section 301(1) of the Public Employee Relations Act ("PERA"), Act of July 23, 1970, P.L. 563, No. 195, art. III § 301, 43 P.S. § 1101.301(1). Rather, I would adopt the reasoning of the Commonwealth Court in *Brownsville General Hospital v. Pa. Labor Relations Board*, 15 Pa.Cmwlth. 428, 433–34, 325 A.2d 662, 665 (1974):

> "[T]o adopt such a construction [as the majority's] would necessitate what we believe to be the unintended result of encompassing many private employers who have chosen the non-profit form of conducting their business and who receive no governmental support. . . ."

Thus, I believe that "any non-profit organization or institution" must first receive "grants or appropriations from local, State or Federal governments" to come within the ambit of the PERA.

The issue as I see it, then, is whether Student Services, Inc.'s rent-free use of Commonwealth-owned real estate constitutes a "grant or appropriation" within the meaning of Section 301(1).[1]

Student Services, Inc. operates *exclusively* for Edinboro State College by providing services for students not offered by the college itself, and its operations are housed in buildings owned by the Commonwealth. As correctly observed by Judge Craig in his dissenting opinion below, "[T]he use of those premises is essential to the functioning and business of Student Services, Inc. . . . . By thus beneficially sharing the use and occupancy of that real estate with the state college, [Student Services, Inc.] is receiving a grant or appropriation

tion election. These objections were not considered by the Commonwealth Court in view of its ruling. The matter is now remanded for the purpose of allowing that court to dispose of the remaining questions.

1. It has been stipulated that Student Services, Inc. is a non-profit corporation.

from the Commonwealth just as fully as the state college itself is thus publicly supported by being provided with the real estate." *In the Matter of Student Services, Inc.* 49 Pa.Cmwlth. 220, 224, 411 A.2d 569, 571 (1980) (Craig, J., dissenting).

Accordingly, I would hold that Student Services, Inc.'s rent-free use of real property owned by the Commonwealth constitutes a "grant or appropriation" within the meaning of Section 301(1) and, thus, that it is a "public employer" subject to the provisions of the PERA.

FLAHERTY, J., joined in this concurring opinion.