Regina NANKO, Petitioner,

v.

**DEPARTMENT OF EDUCATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 20, 1995.

Decided Aug. 15, 1995.

William A. Hebe, for petitioner.

Daniel J. Myers, for respondent.

Before COLINS, President Judge, and DOYLE, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

Regina Nanko (Nanko) appeals from the order of the Professional Standards and Practice Commission (PSPC) affirming a hearing officer's decision which revoked Nanko's certificates as a public educator. We affirm.

Nanko applied and interviewed for a position as Superintendent of the Otto–Eldred School District (School District). At that time, Nanko had certifications in Elementary Education and Elementary Principal, and held an Assistant Superintendent's Letter of Eligibility. During the application process, Nanko indicated that she had a Letter of Eligibility, not specifying that it was to serve merely as Assistant Superintendent and not for the Superintendent position. The Superintendent of the School District assumed that Nanko's Letter of Eligibility was to serve as Superintendent, the position for which she applied.

Upon learning that Nanko's file did not contain a Superintendent's Letter of Eligibility, the Superintendent contacted her. Nanko assured him that she must have sent the wrong Letter of Eligibility and faxed a copy of a document showing eligibility to serve as a Superintendent.[1]

The Superintendent noticed several irregularities in the Letter faxed to him, and, as a result, contacted the Department of Education (Department). The Department stated Nanko did not have the Superintendent's letter. The Superintendent contacted Nanko who assured him that there must be a mistake.

Nanko then contacted the Department asking whether it had received her application for a Letter of Eligibility to serve as Superintendent from the Superintendent of the district where she was at that time employed as principal.[2] While the Department had not received an application at that time, soon thereafter the Department did receive Nanko's application for a Superintendent's Letter of Eligibility. However, the Department discovered that the employment information on the application was false and the signature on the line marked "Superintendent of School" had been forged. Believing that the first application had been lost in the mail, Nanko sent the Department a second application that contained a handwritten note, allegedly from the Superintendent, explaining and apologizing for the delay of submitting Nanko's application.[3] However, this

---

1. Nanko altered a copy of her actual professional certificate.

2. The Northwestern School District then employed Nanko.

3. The PSPC later determined the handwriting to be Nanko's.

application also contained the same irregularities.

The Department denied Nanko a Letter of Eligibility because she lacked the necessary administrative experience but also began an investigation as the local school board recommended Nanko's professional educator's certificates be revoked based on the discrepancies of her applications. The Department filed a "NOTICE OF CHARGES" with the PSPC charging Nanko with forging the signature of the "Superintendent of School" on the two applications for Superintendent's Letters of Eligibility, and on the one related note. In addition, Nanko was charged with misrepresenting her employment history on the two applications, altering her Pennsylvania Public School Certificate and misrepresenting her areas of certification to at least one public school. Nanko timely responded to the Notice of Charges and the PSPC appointed a hearing officer to conduct proceedings in accordance with the provisions of Section 13(c)(1) of the Act of December 12, 1973, P.L. 397, *as amended,* added by the Act of December 14, 1989, P.L. 612, 24 P.S. § 12–1263(c)(1) (Act). Following a hearing, the hearing officer found that the Department had met its burden of proof and recommended revocation of Nanko's certificate as a professional educator.

Nanko filed exceptions to the hearing officer's decision alleging that numerous findings of facts were not supported by the evidence. The PSPC heard oral argument upon the exception but affirmed the decision of the hearing officer. Consistent with that decision, the PSPC ordered the revocation of Nanko's professional certificates.

■ On appeal to this Court,[4] Nanko argues that the PSPC: 1) erred in revoking her professional educator's certificate on the basis of immorality; 2) erred in revoking her certificates without a criminal conviction as required by the Act of May 29, 1931;[5] and 3) abused its discretion by failing to comply with statutorily mandated prerequisites before revoking the certification.

First, Nanko argues that the PSPC erred in revoking her certificates on the basis of "immorality." Pursuant to Section 5(a)(11) of the Act, 24 P.S. § 12–1255(a)(11), the professional educator must be "found guilty upon hearings of immorality, incompetency, intemperance, habitual use of drugs or narcotics, cruelty or negligence or for violation of any provision of the Act of May 29, 1931." Nanko contends that the last sentence of subsection (a)(11) has not been complied with because the PSPC did not establish a definition for "immorality," the basis for her conviction. Nanko asserts that the PSPC's failure to establish a definition for "immorality" has the effect of precluding the PSPC from disciplining her on the basis of "immorality," until it has defined that term.

■ The Department counters, arguing that nothing in the School Code specifically prohibits disciplinary actions before definitions are promulgated, and that the Act does not specify which terms, if any, the PSPC must define. We agree, because had the legislature intended the Act to have a prophylactic effect upon the PSPC's jurisdiction, then the legislature would have listed the specific definitions that must be promulgated before the PSPC could begin asserting its jurisdiction.[6]

Nanko also claims that the definition for "immorality," eventually adopted by the PSPC on December 25, 1993, differs from the traditional common law definition applied in her case by the hearing officer and the PSPC. Nanko argues that because of this substantial difference, she did not receive notice of her offense and was therefore deprived of her constitutional right to due process.

■ We have reviewed the record and hold the Department properly relied on several different cases to define "immorality" including "such conduct as offends the mor-

---

4. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

5. Section 8 of the Act of May 29, 1931, P.L. 210, 24 P.S. § 1231.

6. *See generally* 1 Pa.C.S. § 1903.

als of the community and is a bad example to the youth whose ideals the teacher is supposed to foster and elevate."[7] The definition adopted by the PSPC, effective December 25, 1993, states, "[i]mmorality is conduct which offends the morals of a community and is a bad example to the youth whose ideals a professional educator has a duty to foster and elevate." The difference between the traditional common law definition applied to Nanko, and the definition later promulgated by the PSPC is legally indistinguishable and does not support any due process claim.

Second, Nanko argues that the PSPC erred as a matter of law in revoking her certificate because she had not been found guilty of a misdemeanor under the Act of May 29, 1931. Nanko asserts that before a professional educator may be disciplined by the PSPC, there must be a complaint filed and criminal prosecution and conviction under the Act of May 29, 1931.

■ Although the Act of May 29, 1931 provides for anyone using an invalid or forged legal certificate of registration in the practice of teaching to be guilty of a misdemeanor, we do not agree that there must be a criminal conviction under the Act of May 29, 1931 before the PSPC can take steps to discipline under the Act.

Section 5 of the Act authorizes discipline of a professional educator "found guilty upon hearings of immorality, incompetency, habitual use of drugs or narcotics, cruelty or negligence or for *violation* of any provision of the Act of May 29, 1931. . . ." (Emphasis added). While it is Nanko's position that in order for there to be a *violation* of the Act of May 29, 1931, there must be an *indictment* and *conviction*, we disagree.

If "violation" and "indictment and conviction" were to cover the same circumstances, then Section 5 of the Act would contain surplusage.[8] This section of the Act contains not only a provision that allows discipline of a professional educator for a *violation* of the Act of May 29, 1931, but also has a provision that requires mandatory discipline of professional educators who are "indicted for a crime or misdemeanor involving moral turpitude. . . ."[9] Thus, for this Court to hold that a violation of the Act of May 29, 1931 requires an indictment and conviction would create a surplusage in Section 5 of the Act, which is not permitted under 1 Pa.C.S. § 1922. Therefore, we hold that the PSPC did not err as a matter of law in not requiring an indictment and conviction before disciplining Nanko for violating the Act of May 29, 1931.

Finally, Nanko argues that the PSPC abused its discretion by failing to comply with the statutorily mandated prerequisites before revoking her certification. Nanko asserts that the investigative procedures necessary to initiate the proceedings to discipline a professional educator were not followed, and thus, divested the PSPC of their power to discipline under Section 9 of the Act, 24 P.S. § 12–1259. Nanko alleges that there is no evidence: 1) of a preliminary review; 2) that the records were forwarded to chief counsel; 3) that probable cause had been established; or 4) that notice of charges was timely.

■ However, Nanko did not raise this argument before the PSPC and thus, it is waived pursuant to *Ramsey v. Milk Marketing Board*, 132 Pa.Commonwealth Ct. 74, 572 A.2d 21, *appeal denied*, 526 Pa. 643, 584 A.2d 324 (1990).

7. *Horton v. Jefferson County Dubois Area Vocational Technical School*, 157 Pa.Commonwealth Ct. 424, 429, 630 A.2d 481, 483 (1993); *See also Balog v. McKeesport Area School District*, 86 Pa.Commonwealth Ct. 132, 484 A.2d 198 (1984); *Horosko v. School District of Mount Pleasant Township*, 335 Pa. 369, 6 A.2d 866 (1939).

8. The legislature is presumed not to have intended provisions in its laws as mere surplusage and, hence, we must construe a statute, if possible, so as to give effect to every word, sentence or provision. *See Matter of Employees of Student Services, Inc.*, 495 Pa. 42, 432 A.2d 189, *on remand* 62 Pa.Commonwealth Ct. 126, 435 A.2d 297 (1981).

9. In *Startzel v. Commonwealth, Department of Education*, 128 Pa.Commonwealth Ct. 110, 114, 562 A.2d 1005, 1007 (1989), we defined moral turpitude as "a crime in which fraud is an ingredient." We define fraud as, "a false representation of a material matter made with knowledge of its falsity and with the intent to deceive."

Accordingly, we affirm the order of the PSPC, affirming the hearing officer's decision to revoke Nanko's professional certificates as a public educator.

## ORDER

AND NOW, this 15th day of August, 1995, the order of the Professional Standards and Practice Commission in the above-captioned matter is hereby affirmed.