## Beth Jacob Schools of Philadelphia *v.* Labor Relations Board.

Argued February 7, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Reargument denied April 25, 1973.

*Francis A. Zulli,* Assistant Attorney General, with him *James F. Wildeman,* Assistant Attorney General, and *James L. Crawford,* Assistant Attorney General, for appellant.

*Patrick W. Kittredge,* with him *Herman Lazarus, James R. Redeker* and *Cohen, Shapiro, Polisher, Shiekman and Cohen,* for appellee.

OPINION BY JUDGE ROGERS, March 16, 1973:

The appellee, Beth Jacob Schools of Philadelphia, is a nonprofit corporation engaged in the education, both secular and religious, of Jewish children from kindergarten through high school. It conducts its program in synagogues. Forty-seven teachers, 25 secular and 22 religious (including seven rabbis), instruct the 390 students. Approximately one-half of the teaching time is spent on religious subjects, taught with particular emphasis on understanding and observance of Jewish law embodied in the book of Moses and the prophets, the Talmud and the codes of Jewish living. The school educates its students in conservative or orthodox doc-

trines, and one of its purposes is the inspiring of vocations to the rabbinate among its students. The annual expenses are about $500,000, of which about $200,-000 is derived from tuitions and the balance, except for about $50,000, is received from organized and individual charity. The $50,000 item mentioned is money received because the school participates in the school lunch program of the federal government.

Some of the appellee's instructors, calling themselves the Beth Jacob Teachers' Association, filed with the Pennsylvania Labor Relations Board a petition pursuant to the Public Employe Relations Act[1] for representation seeking an election and certification as the employe representative for the purposes of collective bargaining. The Board scheduled a hearing but Beth Jacob Schools instituted an action in equity seeking to restrain the Board from asserting any jurisdiction over it, its employees or the dispute between them. The court, preliminarily and, after trial permanently, enjoined the Board from exercising any jurisdiction in the premises. The court held that the Board had no power because the appellee school was not a public employer. The Pennsylvania Labor Relations Board has appealed.

Public employer is defined by the Public Employe Relations Act[2] as: ". . . [T]he Commonwealth of Pennsylvania, its political subdivisions including school districts and any officer, board, commission, agency, authority, or other instrumentality thereof and any nonprofit organization or institution and any charitable, religious, scientific, literary, recreational, health, educational or welfare institution receiving grants or appropriations from local, State or Federal governments

---

[1] Section 603(c) of the Act of July 23, 1970, P. L. 563, 43 P.S. §1101.603(c).

[2] Section 301(1), 43 P.S. §1101.301(1).

but shall not include employers covered or presently subject to coverage under the act of June 1, 1937 (P. L. 1168), as amended, known as the 'Pennsylvania Labor Relations Act,' the act of July 5, 1935, Public Law 198, 74th Congress, as amended, known as the 'National Labor Relations Act.' "

The Labor Relations Board states the question before us to be whether the court properly granted injunctive relief. It contends, of course, that it, not the court, should first decide whether there was power to act, subject to either party's right to appeal under the administrative process.

Unwarranted inquisition is not infrequently as harmful as spurious prosecution; and in a free society it should be as promptly interdicted. If there is anything certain in Pennsylvania jurisprudence it is that the courts of this State will enjoin government and its creatures from exercising powers forbidden them by constitution or not conferred by statutes; and this, without regard to whether the complainant is afforded the right to judicial review. The people of this Commonwealth are not required to submit to governmental excess while the administrative process is played out. Hence, although other remedies are available, State taxes may be struck down (*Amidon v. Kane*, 444 Pa. 38, 279 A. 2d 53 (1971)); local levies nullified (*Lynch v. Owen J. Roberts School District*, 430 Pa. 461, 244 A. 2d 1 (1968)); school directors enjoined from abusing their discretion (*Mason v. Hanover Twp. School District*, 242 Pa. 359, 89 A. 552 (1913)); state commissions restrained from inquisitional abuse (*Annenberg v. Roberts*, 333 Pa. 203, 2 A. 2d 612 (1938)); state administrative bodies enjoined from performing unconstitutionally delegated legislative functions (*Bell Telephone Company of Penna v. Driscoll*, 343 Pa. 109, 21 A. 2d 912 (1941)); and municipal functionaries required to

issue permits (*Commercial Properties, Inc. v. Peternel,* 418 Pa. 304, 211 A. 2d 514 (1965)).[3] Omitted from the foregoing, because it is here controlling, is *Western Pennsylvania Hospital v. Lichliter,* 340 Pa. 382, 17 A. 2d 206 (1941). There a preliminary injunction restraining the instant appellant from asserting any rights against certain hospitals under the Pennsylvania Labor Relations Act was upheld against the same contention made here, that is, that the complainants were entitled to seek relief only on appeal from the action of the Board. Our Supreme Court, indeed, dealt with and distinguished *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S. Ct. 459 (1938), the appellant's principal authority here, a case dealing not with fundamental rights but with the construction to be given a federal statute. The Board's points of distinctions between *Lichliter* and the instant case are wholly illusory. Exactly contrary to its assertions, the danger of a multiplicity of suits is probably greater here than in *Lichliter,* the public interest at least as seriously threatened and the case against the Board's power certainly stronger. As to the last mentioned consideration, the *Lichliter* court was called upon to decide whether hospital employes were persons engaged in a single industry, trade, craft, or occupation and concluded that they were not. We are here confronted only with the issue of whether appellee, in the language of the Public Employe Relations Act, received "grants or appropriations from local, State or Federal governments." The resolution of this question in turn depends upon whether money received by the appellee from the federal school lunch program in which it and

---

[3] The suit was in mandamus, a form of action which is, however, governed by equitable principles. *Dombrowski v. Philadelphia,* 431 Pa. 199, 245 A. 2d 238 (1968).

thousands of other private schools participate, is a grant or appropriation to the institutions. The parties have presented us with extended discussions of the constitutional principles relating to public involvement with sectarian schools, the pertinency of which here is not entirely clear to us. However, a reading of the Act of Congress establishing the program appears to us conclusively to establish that any funds dispersed thereunder are not intended to and do not accomplish any form of assistance to the recipient institution. The Congress expresses its policy to be ". . . as a measure of national security, to safeguard the health and well-being of the Nation's children and to encourage the domestic consumption of nutritious agricultural commodities and other food, by assisting the States, through grants-in-aid and other means, in providing an adequate supply of foods and other facilities for the establishment, maintenance, operation, and expansion of *nonprofit* school-lunch programs." (Emphasis supplied.) Section 2 of the Act of June 4, 1946, c. 281, 60 Stat. 230, 42 U.S.C.A. §1751. State disbursement of federal funds to schools participating in the program is limited to ". . . *reimbursing* [the school] for the cost of obtaining agricultural commodities and other foods for consumption by children in the school-lunch program and nonfood assistance in connection with such program." (Emphasis supplied.) Section 8 of the Act of June 4, 1946, 42 U.S.C.A. §1757.

It also appears that the Commonwealth provides appellee the sum of $300 for the purchase of library books which remain the property of the State. This is one of the rare occasions on which an ancient maxim is helpful in solving a modern problem. The maxim *"De minimis non curat lex"* means that the law does not take account of trifling and immaterial matters. Even if this were a grant from the Commonwealth, which it

is not, we would not hold that the Legislature intended that the State should regulate the labor relations of a church school of this Commonwealth as the consequences of so small a subsidy.

Affirmed.