## Chappelle v. Pennsylvania Labor Relations Board

*Colie B. Chappelle*, for complainant.
*Francis J. Connell, III*, for respondent.

CARSON, JR., *J.*, August 31, 1979—Complainant, Colie Chappelle, a former staff attorney employed by respondent Defender Association of the City of Philadelphia, filed his complaint with the Pennsylvania Labor Relations Board, alleging that respondent had engaged in unfair labor practices in violation of sections 1201(a), (1), (2), (3), (4) of the Public Employe Relations Act of July 23, 1970, P.L. 563, art. XII, 43 P.S. §1101.1201.

Respondent filed its answer denying the charges, and by way of new matter, raised the issue of jurisdiction of the board on the ground that it was not a "public employer" within the meaning of the act.

Hearings on the matter were conducted by an examiner designated by the board, and the board subsequently rendered a nisi decision and order basing jurisdiction on the following finding of fact: "That the Defender Association of Philadelphia is a non-profit organization receiving grants or appropriations from the Local, State and Federal Government. . . ."

On the above conclusionary statement, the board based its jurisdiction, without any discussion explaining its reason, except for the statement: "Respondent is a public employer within the meaning of §301(1) of the Act." On the other hand, the board made extensive findings of fact, and focused its attention exclusively on the issue relating to the charges of unfair labor practices, which it found to be unsubstantiated.

Exceptions were filed by both litigants to the order, and after hearing the board issued its final order in which it expanded to some extent its finding as to jurisdiction, as follows:

"Public records disclose that from 1970-1975 the City and County of Philadelphia, Public Definder's (sic) Office received a grant of $286,592.00, to project number PH-10-A-70 from the Governor's Justice Commission. The Courts of Common Pleas of Philadelphia County received $115,347.00 in grants from the Governor's Justice Commission for finds (sic) used by the Public Definder's (sic) office (project number PH-160-73A, PH 74-A34-5-245, and PH-74-C-E2-5-312). These are clearly grants

and appropriations as envisaged by section 301(1) of the Act and clearly place the Public Defender's Office within the ambit of the Act."

As a result of its review, the board dismissed the exceptions of both parties. Thereafter, a petition for judicial review was filed with this court, which upon review of the documents admitted into evidence and made part of the record, along with testimony pertaining thereto, sustained respondent's exceptions to the jurisdiction of the Pennsylvania Labor Relations Board.

The documentary evidence, but for two exceptions, is not identified in the record by project numbers. The court, therefore, examined every document admitted into evidence and all of the testimony relevant thereto in making its determination.

The Defender Association of Philadelphia is a private nonprofit corporation providing legal representation under a contract for purchase of its services with the City of Philadelphia. In addition, funds are received by respondent for its representation of indigent defendants in the United States District Court for the Eastern District of Pennsylvania, the Appellate Division of the Pennsylvania Court System, as well as the Crime Prevention Association. These various sources of funds constituted all of the funds received by respondent and will be discussed seriatim.

The United States Supreme Court, in Gideon v. Wainwright, 372 U.S. 335 (1963), held that the 14th Amendment to the United States Constitution imposed the requirement of the 6th Amendment on the states. This historic decision charged state and local governments with the duty of providing legal representation to defendants who are unable to afford counsel. Respondent had for years been sup-

ported by private contributions, but in 1969 found it was unable to continue its operation due to diminishing contributions. As a result of negotiations with the City of Philadelphia to fulfill the local government's mandated requirements in criminal cases, the City of Philadelphia entered into a contract with respondent in January of 1969. This contract provided in paragraph (2) that the Defender Association would provide counsel in criminal and quasi-criminal cases to defendants who were financially unable to obtain counsel. Additionally this contract specified certain designated categories in which services were to be rendered in return for the city's agreement to compensate respondent for this service. It also provided that either party could terminate the agreement by giving the other party 90 days written notice prior to its anniversary date, to wit, June 30th. Ineligible defendants who utilized respondent's services were liable to the City of Philadelphia for reimbursement, and such causes of action for reimbursement were the sole responsibility of the City of Philadelphia.

Pursuant to the above agreement, respondent billed the City of Philadelphia monthly in advance for reimbursement for legal services to be provided for indigent defendants during the succeeding month. Apparently, the board did not consider this transaction to come within its definition of grants or appropriations, in view of the fact that there is no reference to the same in their findings. The testimony reveals that the funds received under this contract constituted 90 percent of the funds received in any given year by respondent. It is obvious that these payments, in the language of Justice Jones, in Schade v. Allegheny County Institution District, 386 Pa. 507, 512, 126 A. 2d 911 (1956),

constituted the cost of governmental duty and not a charity or benevolence to the organization. Consequently, the conclusion reached by the Supreme Court in that case was that such payments were not within the meaning of the term appropriation, even in its most extended scope.

On October 7, 1974, the Common Pleas Court of Philadelphia entered into a contract with respondent, whereby the court used L.E.A.A. funds secured by way of its application with the Governor's Justice Commission to purchase an increase in court legal representation. These funds, as agreed upon, were used by respondent to employ law interns for legal research, interviewing clients, etc., freeing staff attorneys for trial duties, thus assisting the court in meeting the demands on the Philadelphia justice system. The cost of this service amounted to $24,000 annually.

A similar type of contract for purchase of legal services was executed between the Court of Common Pleas of Philadelphia and respondent expanding appeal services rendered to the court. These L.E.A.A. funds were similarly secured by the court through the Governor's Justice Commission. For these expanded services respondent was reimbursed $35,000 annually.

Clearly, the services rendered by respondent to the Criminal Justice System of the Court of Common Pleas of Philadelphia under the construction announced by Crumlish, J., Judge of this court, in Brownsville General Hospital v. Penna. L.R.B., 15 Pa. Commonwealth Ct. 428, 431-437, 325 A. 2d 662 (1974), were not grants and appropriations within the meaning of the act. These Federal funds were dispersed through the state to reimburse agencies for improving and meeting their legal duties mandated by the United States Constitution.

Hence, they are governmental costs and are deemed to be made on behalf of eligible individual recipients. See also Beth Jacobs Schools of Philadelphia v. Labor Relations Board, 8 Pa. Commonwealth Ct. 343, 348, 301 A. 2d 715 (1973).

On May 29, 1973, respondent entered into a contract with the Court of Common Pleas of Philadelphia County to purchase the services of one of its staff attorneys to assist in a special judicial investigation conducted by the court. The agreement provided for reimbursement at the rate of the attorney's then salary. This contract was amended on July 24, 1974, to increase the rate of reimbursement in keeping with the attorney's increased salary.

A similar type purchase of service contract was entered by and between respondent and the Crime Prevention Association on or about January 1, 1974. By this agreement, respondent agreed to provide a full time attorney to provide required legal services to this program for which the Defender Association was to receive a total reimbursement in the sum of $18,700.

The above three contracts are outright purchases of legal services with the contracting parties and are not classified as either grants or appropriations, even though the sources by which the contracting agencies received their funds were through Federal programs. Additionally, in comparison with respondent's overall budget, the amounts involved must be considered as de minimis, and insufficient to constitute a jurisdictional base. See Brownsville General Hospital citing Beth Jacobs at pages 348-349, supra.

The remaining source of income received by respondent from the Federal courts was reimbursement for legal services rendered to indigent de-

fendants charged with criminal offenses in the United States District Court for the Eastern District of Pennsylvania. The funds received under this arrangement are similar to the funds received by respondent through its contract for the purchase of legal services, and hence were payments for the benefit of individuals, not to the association.

The board chose to ignore the decisional law of our appellate courts distinguishing payments received as reimbursement for performing a governmental duty, and direct grants or appropriations from government in the form of assistance to the recipient organization. In these cases, where the service is rendered to the individual to whom the government owes a duty it cannot be considered a charity or a benevolence.

Accordingly, on the record in this case, there is not a scintilla of evidence supporting the findings made by the board that respondent received grants or appropriations from the state, local or Federal government and hence respondent is not a "public employer" within the meaning of Act 195. Respondent, therefore, is not within the jurisdiction of the Pennsylvania Labor Relations Board.