608 A.2d 564

**CENTRAL DAUPHIN SCHOOL DISTRICT et al., Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT of EDU-CATION and Donald M. Carroll, Jr., Secretary of Education of the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Jan. 14, 1992.

Decided Feb. 7, 1992.

Publication Ordered April 24, 1992.

Stuart L. Knade, for petitioners.

Gregory R. Neuhauser, for respondents.

## ADJUDICATION AND DECREE NISI

PALLADINO, Judge.

In our original jurisdiction under Pa.R.A.P. 1502, Petitioners Central Dauphin School District, Hatboro–Horsham School District, Steelton–Highspire School District and The Pennsylvania School Board Association [1] (collectively, School Districts) have filed a petition for review in the nature of a request for injunctive relief and a declaratory

---

1. The Pennsylvania School Board Association is a nonprofit Pennsylvania corporation whose purpose is to assist and advise Pennsylvania public school districts about education matters of statewide interest.

judgment regarding the interpretation of Act 25 of 1991 (Act 25)[2] which added subsections (g) and (h) to section 687 of the Public School Code of 1949, 24 P.S. § 6–687(g)–(h). In reply to the School Districts' petition for review, Respondents Department of Education and Secretary of Education Donald M. Carroll, Jr., (collectively, Secretary) have filed an answer which avers that Act 25 "speaks for itself and there are no disputes as to its meaning."[3] For the following reasons, we conclude that it is appropriate to issue an adjudication and decree nisi which grant the requested declaratory relief by construing Act 25 and which partially grant the requested injunctive relief.[4]

## I. PROCEDURAL HISTORY

On August 28, 1991, in the Commonwealth Court of Pennsylvania, the School Districts filed a petition for review seeking declaratory and injunctive relief. A trial on the School Districts' petition for review was held before Judge

2. Act of August 5, 1991, P.L. 219, Act No. 91–25, amending various sections of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702.

3. Secretary's Answer, para. 1, at 1. This averment is discussed in this adjudication under the headings section II. Motion for Nonsuit and section III. Right to Declaratory Judgment.

4. The Secretary's answer to the School Districts' petition for review also included affirmative defenses pleaded under the heading New Matter pursuant to Pa.R.C.P. No. 1030. The School Districts filed an answer to the Secretary's New Matter. As New Matter, the Secretary averred that the Secretary's August 16, 1991 budget reopening instructions were consistent with Act 25, that the School Districts' petition for review failed to state a claim upon which relief could be granted, that the School Districts lacked standing to sue, that the School Districts' action was barred by sovereign immunity, and that Secretary Carroll was immune from suit. We note that the Secretary has failed to pursue the standing issue and the two immunity issues. Therefore, we deem these issues waived. The issue concerning the consistency of the August 16 budget reopening instructions and Act 25 is considered in this adjudication under subsection III.A. Validity of Audit Procedures. The issue concerning whether the School Districts have stated a claim upon which relief be granted is addressed in this adjudication under section II. Motion for Nonsuit and section III. Right to Declaratory Judgment.

Palladino on January 14, 1992.[5]

At the trial, the School Districts and the Secretary offered into evidence a joint stipulation of facts and a joint addendum thereto. The Secretary objected to the relevance of paragraphs 8, 9, 15, and 25 of the parties' joint stipulation of facts.[6] The court deferred ruling on the objections pending the decision on the merits of the case. At the conclusion of the School Districts' case, the Secretary moved for the entry of a compulsory nonsuit. Pa.R.C.P. Nos. 230.1 and 1512. Without objection from the School Districts, the court deferred ruling on the motion pending the decision on the merits of the case. The Secretary then offered into evidence, without objection from the School Districts, two exhibits representing the original (pre-Act 25) budget of the Hatboro–Horsham School District which was received by the Secretary on July 22, 1991 and the revised (post-Act 25) budget of the Hatboro–Horsham School District which was received by the Secretary on September 13, 1991.

Now before us for disposition are the Secretary's motion for a compulsory nonsuit,[7] the Secretary's objections to four paragraphs in the parties' joint stipulation of facts,[8] and the

5. In the interim between the filing of the petition for review and the trial, the School Districts' application for special relief in the nature of a preliminary injunction was partially granted and partially denied by a memorandum opinion authored by Judge Palladino, the School Districts' application for an injunction pending appeal to the Supreme Court of Pennsylvania was denied by an order authored by Judge Palladino and by a subsequent order of the Supreme Court of Pennsylvania, and the parties' cross-applications for summary relief were denied by a commonwealth court panel opinion authored by Judge Palladino.

6. The objection was consistent with the introductory paragraph of the parties' joint stipulation of facts which states that the parties "do not necessarily agree as to the relevance of all matters described [in the joint stipulation] nor as to the weight such matters should be given by the Court." Parties' Joint Stipulation of Facts at 1.

7. See the section of this adjudication captioned II. Motion for Nonsuit.

8. This court's ruling on the Secretary's objection to paragraphs 8 and 9 appears in the section of this adjudication captioned III. Right to Declaratory Judgment. This court's ruling on the Secretary's objec-

School Districts' petition for review seeking declaratory [9] and injunctive relief.[10]

## II. MOTION FOR NONSUIT

At the close of the School Districts' case, the Secretary moved for a compulsory nonsuit. Pursuant to Pa.R.C.P. Nos. 230.1 and 1512, a court may enter a compulsory nonsuit if the plaintiffs (here, Petitioner School Districts) have failed to demonstrate a right to relief by presenting insufficient evidence to establish facts material to the plaintiffs' case. *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978). We conclude that the Secretary's motion for nonsuit must be denied because the School Districts have presented sufficient evidence to support their right to a declaratory judgment. By offering into evidence the parties' joint stipulation of facts, the School Districts have satisfied the prerequisites for the entry of a declaratory judgment by establishing the existence of an actual controversy ripe for adjudication.

In the uncontested portion of their joint stipulation of facts, the parties have stated that Act 25 requires the School Districts

> to reopen their 1991–92 annual budgets during the month of August 1991 and to revise those budgets to reflect increases in certain subsidy allocations and decreases in anticipated retirement contributions. The amendments to Act 25 also outlined circumstances in which school districts were to abate local real estate or other nuisance taxes in conjunction with the revisions to their budgets.

tion to paragraph 15 appears in the section of this adjudication captioned III.B.4. Abatement or Rebate of Taxes under Act 25. This court's ruling on the Secretary's objection to paragraph 25 appears in the section of this adjudication captioned III.A. Validity of Budget Reopening Instructions.

9. This court's resolution of the School Districts' request for a declaratory judgment appears in the section of this adjudication captioned III. Right to Declaratory Judgment.

10. This court's resolution of the School Districts' request for an injunction appears in the section of this adjudication captioned III.C. Conclusion.

The particular circumstances in which Act 25 requires local tax abatement, the manner in which the amount of funds to be used for abatement is to be calculated, and the uses to which any unanticipated funds may otherwise be applied are among the matters disputed by the parties in this action.

Parties' Joint Stipulation of Facts, para. 14, at 5–6. Therefore, the parties' joint stipulation reveals the existence of an actual controversy concerning the interpretation of Act 25. *See Pennsylvania Chiropractic Federation v. Foster,* 136 Pa.Commonwealth Ct. 465, 583 A.2d 844 (1990).

Additionally, the uncontested portions of the parties' joint stipulation of facts show that the matters of interpretation raised by the School Districts' request for a declaratory judgment are ripe for adjudication. *See American Council of Life Insurance v. Foster,* 134 Pa.Commonwealth Ct. 634, 580 A.2d 448 (1990). In their joint stipulation, the parties have stated that

[o]n August 16, 1991, the Secretary of Education disseminated to local school districts in Pennsylvania a letter accompanied by several forms and documents (including instructions for completing the forms) to be used by school district personnel in calculating additional state revenues provided by the General Assembly and local savings as a result of a decrease in employer retirement contribution rates, as well as in calculating the amount of any local tax abatement.

Parties' Joint Stipulation of Facts, para. 16, at 7. Accordingly, the joint stipulation manifests that the School Districts have been directed by the Secretary to comply with the Secretary's interpretation of Act 25 as embodied in the Secretary's August 16 budget reopening instructions and that the court's refusal to consider the issues raised in the School Districts' request for declaratory judgment will result in hardship to the parties and litigation.

Given the evidence offered by the School Districts to establish the material facts of their case, we hold that a compulsory nonsuit would be inappropriate because the

School Districts have substantiated their entitlement to a declaratory judgment.

## III. RIGHT TO DECLARATORY JUDGMENT

The School Districts and the Secretary agree that Act 25 requires the board of directors for each covered school district [11] to reopen the school district's previously adopted fiscal year 1991–1992 budget for the purpose of adjusting the budget to reflect (1) increases in state subsidies to school districts pursuant to the General Appropriation Act of 1991 [12] and (2) school district expenditure decreases resulting from lower local employer retirement contribution rates. 24 P.S. § 6–687(g).

The School Districts and the Secretary differ in their interpretation of Act 25 concerning how, under newly added subsections 687(g)(2)–(4), the affected school districts shall, after reopening and adjusting their budgets, alleviate the burden of local property and nuisance taxes which were levied at the time of the school districts' original budget adoptions. The Secretary's interpretation of subsections 687(g)(2)–(4) appears in the Secretary's August 16, 1991 letter and enclosures which provide fiscal year 1991–1992 budget reopening instructions (August 16 budget reopening instructions) to school districts affected by Act 25.

By seeking a declaratory judgment, the School Districts' are requesting a judicial interpretation of Act 25 in order to resolve the parties' uncertainty about the meaning of Act 25's provisions and to resolve the parties' respective rights and obligations under Act 25.[13] Because the present case

11. Petitioners Central Dauphin School District, Hatboro–Horsham School District, and Steelton–Highspire School District are encompassed by the provisions of Act 25. *See* 24 P.S. § 6–687(a); *see also Appeal of Neshaminy Auto Villa Ltd.*, 25 Pa.Commonwealth Ct. 129, 358 A.2d 433 (1976) (the remainder of an original statute and an amendment to that statute are construed together as if enacted concurrently).

12. Act of August 4, 1991, P.L. ——, Act No. 91–7A.

13. We emphasize that the resolution of the School Districts' request for declaratory relief involves solely questions of law and not ques-

involves an actual controversy concerning Act 25's interpretation and the controversy is ripe for adjudication, we hold that this case presents a proper circumstance for the exercise of our discretion to render a declaratory judgment. *E.g., American Council of Life Insurance; Mid–Centre County Authority v. Township of Boggs,* 34 Pa.Commonwealth Ct. 494, 384 A.2d 1008 (1978); sections 7532, 7533, 7537 and 7541 of the Declaratory Judgments Act, 42 Pa.C.S. §§ 7532, 7533, 7537 and 7541.

The School Districts seek declarations regarding the validity of the Secretary's audit procedures, the total moneys available under Act 25, the permitted use of moneys under Act 25, the effect of low expenditures supplements under Act 25, and the necessity for an abatement or a rebate of taxes under Act 25.

### A. Validity of Budget Reopening Instructions

■ The School Districts request (1) a declaration that subsection 687(g)(6) of Act 25 requires the Secretary to effectuate Act 25 by promulgating regulations and (2) a corresponding declaration that the Secretary's August 16 budget reopening instructions constitute an invalid attempt by the Secretary to promulgate regulations without satisfying the requisites of the Commonwealth Attorneys Act,[14] the Regulatory Review Act,[15] and what is popularly known as the Commonwealth Documents Law.[16] The Secretary argues that he was not required to promulgate regulations

tions of fact. Consequently, many portions of the parties' joint stipulation of facts are not especially germane to the disposition of the School Districts' petition for review. For this reason, we sustain the Secretary's objections to paragraphs 8 and 9 of the parties' joint stipulation of facts on the ground that those two paragraphs are not relevant to a resolution of the School Districts' petition for review in the nature of a request for a declaratory judgment construing Act 25.

**14.** Act of October 15, 1980, P.L. 950, *as amended,* 71 P.S. §§ 732–101—732–506.

**15.** Act of June 25, 1982, P.L. 633, reenacted and amended by Act of June 30, 1989, P.L. 73, *as amended,* 71 P.S. §§ 745.1–.15.

**16.** Provisions of the Commonwealth Documents Law are found at Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1208, and at 45 Pa.C.S. §§ 501–907.

for the implementation of Act 25 and that he therefore issued his August 16 budget reopening instructions rather than promulgating regulations.

Subsection 687(g)(6) of Act 25 explains the method by which Act 25 is to be implemented by the Secretary. In subsection 687(g)(6), the General Assembly directs the Secretary to "establish the administrative procedures necessary to audit school district compliance with the provisions of [section 687 as amended by Act 25]." 24 P.S. § 6-687(g)(6). The Secretary responded to this implementation directive by composing budget reopening instructions which were dated August 16, 1991 and which were sent to the School Districts.

To interpret the implementation directive of subsection 687(g)(6) to determine whether it compels the Secretary to promulgate regulations, we are guided by the principle of statutory construction that when the General Assembly has varied the wording in two similar statutory provisions, the variance in wording signals a difference in legislative intent. *Corley v. Pennsylvania Board of Probation and Parole*, 83 Pa.Commonwealth Ct. 529, 478 A.2d 146 (1984). We note that when the General Assembly has intended to have a statute implemented by an agency's promulgation of regulations, the General Assembly has explicitly so directed. *E.g.*, the implementation directive of section 28 of the Act of February 7, 1990, P.L. 11, Act No. 90-6 ("Act 6"), wherein the General Assembly expressly and unequivocally directs the Insurance Department and the Department of Transportation to "promulgate regulations to the extent necessary to carry out the provisions of [Act 6]." Consequently, because subsection 687(g)(6) does not expressly require the promulgation of regulations, we hold that the implementation directive of subsection 687(g)(6) does not compel the Secretary to promulgate regulations in order to effectuate Act 25.

Our interpretation of subsection 687(g)(6) is consistent

with the tight time frame of Act 25.[17] 1 Pa.C.S. § 1922; *Keitt.* The General Assembly's decision not to implement Act 25 by the promulgation of regulations manifests the General Assembly's concern that the Secretary could not both adhere to Act 25's tight time frame and satisfy the notice, comment period, and hearing requirements for the promulgation of regulations to audit school district compliance with Act 25.

■ Having held that the Secretary was not required to promulgate regulations, we also conclude that the August 16 budget reopening instructions were not regulations and, accordingly, did not have to be issued in compliance with the Commonwealth Attorneys Act, the Regulatory Review Act, and the Commonwealth Documents Law.[18]

### B. Interpretation of Act 25

Next, the School Districts seek a declaration as to the meaning of certain provisions of Act 25 which are enumerated under the headings subsection 687(g)(2), subsection 687(g)(3), and subsection 687(g)(4). In particular, the School Districts ask this court to construe the three subsections with respect to the total moneys available for local taxpayer relief under Act 25, the permitted use of moneys available under Act 25, the effect of low expenditure supplements

17. The timetable expressed in 24 P.S. § 6–687(g)(1)–(2) and (h) is as follows: August 31, 1991 deadline for school districts to reopen their budgets for fiscal year 1991–1992; September 16, 1991 deadline for school districts to submit revised budget information to Respondent Department of Education, and October 30, 1991 deadline for school districts to alleviate the burden of local taxes.

18. We overrule the Secretary's objection to paragraph 25 of the parties' joint stipulation of facts. Paragraph 25 refers to, and incorporates by reference and attachment, the Secretary's electronic mail memorandum (Information Concerning Reopening of School District Budgets as Required by Act 25) which was sent to school districts on August 26, 1991 as a clarifying addendum to the Secretary's August 16 budget reopening instructions. We deem this document relevant as an additional explanation of the Secretary's interpretation of Act 25 which should be read together with the Secretary's August 16 budget reopening instructions. Additionally, we note that the School Districts have not contested the validity of the Secretary's August 26, 1991 electronic mail memorandum.

under Act 25, and the need for either an abatement or a rebate of taxes under Act 25. In their entirety, the three subsections in question state:

[Subsection 687(g) ](2) In those districts which levy taxes and where the additional State revenues provided by the General Assembly and the local savings as a result of a decrease in employer retirement contribution rates exceed the State revenue figures and local revenues utilized by the school district at the time of adoption of its original fiscal year 1991–1992 budget, the district shall use these additional State funds to abate local property tax or nuisance taxes, or both, which were levied at the time of original budget adoption within sixty (60) days of the reopening of the district's budget.

[Subsection 687(g) ](3) Those districts which levy taxes and in which the additional State revenues generated as a result of passage of the 'General Appropriation Act of 1991,' when compared to State revenue figures utilized in their originally adopted budget, exceed the budgeted figures by an amount insufficient to cost-effectively prepare and mail adjusted tax notices shall apply to the Department of Education for a waiver of this tax rebate provision.

[Subsection 687(g) ](4) Under no circumstances shall any of these additional State revenues be used to increase a district's existing fund balance or for deposit into any district reserve accounts but shall be specifically utilized to meet fiscal year 1991–1992 program needs and to reduce local tax levies.

### 1. Total Moneys Available under Act 25

■ The School Districts and the Secretary disagree about the amount of moneys which are subject to Act 25's taxpayer relief measures. Their disagreement stems from their diverse definitions of the subsection 687(g)(2) phrase "additional State funds." The School Districts interpret the phrase "additional State funds" to mean that solely "additional State revenues" are available for tax relief purposes

under Act 25 whereas the Secretary's August 16 budget reopening instructions interpret the phrase "additional State funds" to mean that both "additional State revenues" and local employer retirement contribution savings are available for tax relief purposes under Act 25.

In determining how the General Assembly intended the phrase "additional State funds" to be construed, we are guided by the interpretive principles enunciated in the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991. In particular, we recognize that the provisions of a statute must be construed with reference to the entire statute and in a manner that gives effect to all the provisions of the statute. Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922; *Wolfe v. Department of Transportation, Bureau of Traffic Safety,* 24 Pa.Commonwealth Ct. 261, 355 A.2d 600 (1976); *Keitt v. Ross,* 17 Pa.Commonwealth Ct. 183, 331 A.2d 582 (1975).

We begin our analysis by recognizing that subsection 687(g)(1) provides a definition of the phrase "increased allocations." Subsection 687(g)(1) defines "increased allocations" to include "subsidy payments on account of instruction; small district assistance payment; payments on account of transportation of nonpublic school pupils; State reimbursement for health services; and local savings accruing as a result of decreases in employer retirement contribution rates." However, subsection 687(g)(2) contains the phrase "additional State funds" rather than the phrase "increased allocations." Therefore, we conclude that the definition of the subsection 687(g)(1) phrase "increased allocations" is not determinative of the definition of the subsection 687(g)(2) phrase "additional State funds."

The phrase "additional State funds" appears only in subsection 687(g)(2). However, the phrase "additional State revenues" appears not only in subsection 687(g)(2) but also in subsections 687(g)(3) and 687(g)(4). By examining how subsections 687(g)(3) and 687(g)(4) utilize the phrase "additional State revenues," we can determine how that phrase must be construed in subsection 687(g)(2) in relation to the

subsection 687(g)(2) phrase "additional State funds." In this manner, we can ascertain whether the subsection 687(g)(2) phrase "additional State funds" is interchangeable with the subsection 687(g)(2) phrase "additional State revenues" or whether the phrase "additional State funds" denotes, as argued by the Secretary, the aggregate of "additional State revenues" and local employer retirement contribution savings.

Subsection 687(g)(3) permits school districts to apply for a waiver of the tax rebate component of Act 25 when the originally anticipated state revenues are exceeded by the "additional State revenues" available under the General Appropriation Act of 1991. Subsection 687(g)(3) does not contain any indication that local employer retirement contribution savings are to be regarded as "additional State funds" that a school district must consider in determining its eligibility for a tax rebate waiver. Similarly, subsection 687(g)(4) prohibits a school district from augmenting its existing fund balance or reserve accounts by using "additional State revenues," but subsection 687(g)(4) does not contain any indication that a school district is prohibited from using local employer retirement contribution savings for such augmentation purposes.

Subsections 687(g)(3) and 687(g)(4) refer solely to "additional State revenues" and do not mention local employer retirement contribution savings. Therefore, for purposes of tax relief under Act 25, subsections 687(g)(3) and 687(g)(4) clearly differentiate "additional State revenues" from local employer retirement contribution savings and unquestionably premise tax relief entirely on "additional State revenues" rather than on the aggregate of "additional State revenues" and local employer retirement contribution savings.

Accordingly, we hold that, to be consistent with the clear legislative intent in subsections 687(g)(3) and 687(g)(4), subsection 687(g)(2) must be construed so that the phrase "additional State funds" refers exclusively to "additional

State revenues" and does not refer to local employer retirement contribution savings.

## 2. Permitted Use of Moneys under Act 25

██ The School Districts and the Secretary disparately construe Act 25's provisions concerning the utilization of "additional State revenues" to finance local programs rather than to alleviate the burden of local property and nuisance taxes. Their differing interpretations derive from their respective understandings of the interrelationship between subsections 687(g)(4), 687(g)(3), and 687(g)(2).

Subsection 687(g)(4) states that "additional State revenues" shall not be used to increase a school district's "existing fund balance" and shall not be deposited into a school district's reserve accounts "but shall be specifically utilized to meet fiscal year 1991–1992 program needs and to reduce local tax levies." Subsection 687(g)(3) states that when "additional State revenues" available to a school district under the General Appropriation Act of 1991 do not exceed the revenue figures in the district's originally adopted budget by an amount sufficient for the district to make a cost-effective tax rebate, the district may request a tax rebate waiver from the Secretary.

The School Districts contend that, pursuant to subsection 687(g)(4), they may, at their discretion, use their "additional State revenues" to satisfy their fiscal year 1991–1992 program needs. The Secretary argues that the portion of subsection 687(g)(4) pertaining to program needs becomes applicable only after a school district has received a tax rebate waiver in conformity with subsection 687(g)(3).

In ascertaining how the General Assembly intended subsection 687(g)(4) to be read, we are compelled by the principles of statutory construction to interpret subsection 687(g)(4) with reference to Act 25's other provisions so that all the provisions of the statute may be operative. 1 Pa.C.S. § 1922; *Wolfe; Keitt.* Words in a statute are not to be considered superfluous. 1 Pa.C.S. § 1922; *In re Employ-*

*ees of Student Services, Inc.*, 495 Pa. 42, 432 A.2d 189 (1981).

 In order to reconcile and give effect to subsections 687(g)(2), 687(g)(3), and 687(g)(4), we hold that subsection 687(g)(2) and subsection 687(g)(4) must be construed together to require a school district to relieve the local tax burden by the full amount that the "additional State revenues" accessible to the school district under the General Appropriation Act of 1991 exceed the revenue figures appearing in the district's originally adopted budget unless the school district has obtained a waiver from the Secretary in accordance with subsection 687(g)(3). Concomitantly, we also conclude that subsection 687(g)(4) must be interpreted to permit a school district to use the excess "additional State revenues" available to it under the General Appropriation Act of 1991 for the funding of fiscal year 1991–1992 programs only if the district has received a waiver from the Secretary in accordance with subsection 687(g)(3). If subsection 687(g)(4) were otherwise construed, the waiver requirement of subsection 687(g)(3) would be eviscerated.[19]

### 3. Effect of Low Expenditure Supplements under Act 25

 The School Districts ask that we explain the impact which the low expenditure supplement provisions of Act 25 have upon subsection 687(g)(2)'s determination of the total moneys available for tax relief measures.

Act 25's low expenditure supplements are enumerated under the headings subsection 2502.17 and subsection 2502.-

---

**19.** Because we have held that the subsection 687(g)(2) phrase "additional State funds" does not include local employer retirement contribution savings and because subsections 687(g)(3) and 687(g)(4) refer solely to "additional State revenues" and do not mention local employer retirement contribution savings, any moneys made available to a school district as a result of local employer retirement contribution savings may be used by the school district in its discretion without the prior receipt of a subsection 687(g)(3) tax waiver from the Secretary.

18.[20] In pertinent part, subsection 2502.17 gives a "low expenditure, low wealth supplement" of 1.3 percent of a school district's actual instruction expenditure for the reimbursable year to a school district with a market value/income aid ratio of 0.6000, or greater, and "an actual instruction expenditure per weighted average daily membership for the school year prior to the reimbursable year, which is less than the Statewide median actual instruction expenditure per weighted average daily membership for that year...." In pertinent part, subsection 2502.18 gives a "low expenditure poverty supplement" of 0.5 percent of a school district's actual instruction expenditure to a school district with "an actual instruction expenditure per weighted average daily membership for the school year prior to the reimbursable year, which is less than three thousand four hundred forty-five dollars ($3445), and has ten percent (10%) or more of its pupils in average daily membership as children in low-income families."

The School Districts assert that the Secretary's August 16 budget reopening instructions impermissibly insert the word "all" into subsection 687(g)(2) and misconstrue subsection 687(g)(2) to mandate that a school district alleviate the burden of local taxes by *all* excess "additional State revenues," i.e., by the full amount that the district's originally adopted budget figures are exceeded by the "additional State revenues," including the subsection 2502.17 and subsection 2502.18 low expenditure supplements, generated by the General Appropriation Act of 1991. The School Districts contend that such an interpretation of subsection 687(g)(2) frustrates the legislative intent of the subsection 2502.17 and subsection 2502.18 low expenditure supplements by forcing a school district to transfer the two low expenditure supplement amounts to local taxpayers in the form of tax relief and by therefore allegedly depriving the district of the benefit of the two supplements.

**20.** Act 25 amends the Public School Code of 1949 by adding subsections 2502.17 and 2502.18, 24 P.S. §§ 25–2502.17–.18.

We conclude that the School Districts have misperceived the legislative intent underlying the subsection 2502.17 and subsection 2502.18 low expenditure supplements. The purpose of the two supplements is not to provide a school district with a windfall, i.e., with moneys that the district did not anticipate at the time of its original budget adoption. *See, e.g.,* subsections 687(g)(2) and 687(g)(3). The purpose of Act 25, and specifically of the two low income expenditure supplements of Act 25, is to replace local taxpayer moneys with state subsidies so that the local tax burden may be alleviated without disadvantaging a low income district's school students. *See, e.g.,* that portion of Act 25 listed under the heading subsection 2501(18). A school district will not suffer an economic loss if the district alleviates the local tax burden only by the amount that the "additional State revenues" available to the school district under the General Appropriation Act of 1991 exceed the revenues anticipated by the school district at the time of its original budget adoption.

Our interpretation of subsections 2502.17 and 2502.18 is consistent with the wording of subsection 687(g)(2) which states that a school district "shall" use the excess "additional State revenues" available to it under the General Appropriation Act of 1991 to alleviate local property or nuisance taxes. We construe the word "shall" in subsection 687(g)(2) to be mandatory and not permissive [21] because, if subsection 687(g)(2) were construed to permit school districts to use their unfettered discretion in determining whether to utilize any or all excess "additional State revenues" to relieve the local tax burden, the subsection 687(g)(3) waiver requirement would be rendered superfluous. *See, e.g.,* 1 Pa.C.S. § 1922; *Wolfe; Keitt.* In subsection 687(g)(3), the General Assembly has provided an explicit mechanism by which a school district may ask to be

21. *See, e.g., Girard School District v. Pittenger,* 29 Pa.Commonwealth Ct. 176, 370 A.2d 420 (1977), *rev'd on other grounds,* 481 Pa. 91, 392 A.2d 261 (1978) ("shall" is generally mandatory and not directive).

relieved of the requirement of alleviating the local tax burden.

### 4. Abatement or Rebate of Taxes under Act 25

 Finally, the School Districts and the Secretary dispute whether Act 25 necessitates a tax abatement (i.e., a reduction of tax assessments) or a tax rebate (i.e., a refund or return of moneys to taxpayers). Their dispute is premised upon their varying interpretations of Act 25's provisions delineated under the headings subsection 687(g)(2), subsection 687(g)(3), subsection 687(g)(4), and subsection 687(g)(5).

The School Districts assert that Act 25 does not contemplate, in any way or at any time, a tax refund to local taxpayers.[22] Instead, the School Districts allege that Act 25 merely requires a lessening of the local tax burden.

The School Districts allege that their interpretation of Act 25 is consonant with the language in subsections 687(g)(2), 687(g)(4) and 687(g)(5). Subsection 687(g)(2) directs school districts to use the "additional State revenues" available to it under the General Appropriation Act of 1991 to "abate" local property or nuisance taxes. Quoting Black's Law Dictionary (5th ed. 1979) and Webster's New Collegiate Dictionary (1979), the School Districts assert that a tax

---

**22.** The School Districts assert that the August 16 budget reopening instructions contain a tax "rebate" deadline which does not appear in subsection 687(g)(2). Instead, the School Districts contend that the deadline established in subsection 687(g)(2) is strictly the time limit by which a school district must "abate" local taxes. At the October 7, 1991 appellate oral argument on the parties' applications for summary relief, the Secretary conceded that the August 16 budget reopening instructions mistakenly construed subsection 687(g)(2) to require school districts to rebate, rather than abate, local taxes by the deadline expressed in subsection 687(g)(2). The Secretary agreed at oral argument that the deadline in subsection 687(g)(2) must be interpreted solely as a tax abatement (reduction) time limit because school districts would otherwise be forced to rebate (return or refund) to taxpayers moneys that the school districts had not yet received from the state in the form of "additional State revenues" which, under the General Appropriation Act of 1991, would be given to the school districts in increments throughout fiscal year 1991–1992 and not in a lump sum at the start of fiscal year 1991–1992.

abatement signifies a tax reduction but does not necessarily entail a tax rebate (refund). Subsection 687(g)(4) specifies that a school district shall use the "additional State revenues" available to it under the General Appropriation Act of 1991 to "reduce local tax levies." Subsection 687(g)(5) states that, if a school district mails adjusted tax notices after it reopens its fiscal year 1991–1992 budget, the district shall state in the adjusted tax notices that the General Appropriation Act of 1991 has resulted in "decreased school district tax assessments." The School Districts do not attempt to correlate their interpretation with the tax rebate language in subsection 687(g)(3).

Citing subsection 687(g)(3), the Secretary claims that Act 25 contemplates an eventual rebate (refund) to local taxpayers as long as a refund is financially practical. The Secretary stresses that subsection 687(g)(3) requires a school district to apply for a waiver of "this tax rebate provision" when the "additional State revenues" available under the General Appropriation Act of 1991 do not exceed the state revenue figures anticipated at the time of the school district's originally adopted budget by an amount that will enable a cost-effective preparation and mailing of adjusted tax notices.

We construe the subsection 687(g)(3) phrase "this tax rebate provision" to refer to the overall tax relief plan embodied in Act 25 and to require a school district to refund moneys to local taxpayers if the "additional State revenues" received by the district under the General Appropriation Act of 1991 exceed the revenues anticipated by the school district at the time of its original budget adoption by an amount sufficient to permit a cost-effective preparation and mailing of adjusted tax notices. Our interpretation reconciles and gives effect to all the provisions of Act 25, *see, e.g.,* 1 Pa.C.S. § 1922; *Wolfe; Keitt,* because it recognizes that a refund of moneys to local taxpayers effectively yields an abatement of local taxes, a reduction of local tax levies, and a decrease in school district tax assessments. See the specific language in subsections 687(g)(2), 687(g)(4), and

687(g)(5). Reading together subsections 687(g)(2), 687(g)(3), 687(g)(4), and 687(g)(5), we conclude that the General Assembly's intent in Act 25 was to have a school district formulate its tax relief plan by the deadline appearing in subsection 687(g)(2) and thereafter, in the absence of a subsection 687(g)(3) waiver, refund moneys to local taxpayers as "additional State revenues" are received by the school district in conformity with the General Appropriation Act of 1991.[23]

## C. Conclusion

Accordingly, the School Districts' petition for review in the nature of a request for declaratory relief is hereby granted. *See* 42 Pa.C.S. §§ 7532, 7533, 7537, and 7541 (declaratory judgment); Pa.R.C.P. No. 1517 (adjudication and decree nisi). Additionally, Respondents Secretary and Department of Education are hereby enjoined from requiring a school district subject to Act 25 to seek a subsection 687(g)(3) waiver with respect to the school district's use of local employer retirement contribution savings. The School Districts' request for an injunction is hereby denied in all other respects.

## DECREE NISI

AND NOW, February 7, 1992, the court enters the following order in the above-captioned case:

1. The motion of Respondents Secretary and Department of Education (hereafter, "Respondents") for a compul-

---

**23.** We overrule the Secretary's objection to paragraph 15 of the parties' joint stipulation of facts. Paragraph 15 avers that school districts receive state subsidies in periodic installments over the course of the fiscal year. At the October 7, 1991 oral argument on the parties' cross-applications for summary relief, the Secretary agreed that subsection 687(g)(2) enunciated a tax abatement (reduction) deadline rather than a tax rebate (refund) deadline because it would be incongruous for the General Assembly to have intended school districts to refund moneys prior to their receipt of state subsidies which are paid to them in periodic installments. Consequently, paragraph 15 is relevant to the interpretation of Act 25's language concerning abatement of taxes and rebate of tax moneys.

sory nonsuit against Petitioners Central Dauphin School District, Hatboro–Horsham School District, Steelton–Highspire School District and The Pennsylvania School Board Association (hereafter, "Petitioners") is hereby denied.

2. The objection of Respondents to paragraphs 8 and 9 of the Joint Stipulation of Facts submitted by Respondents together with Petitioners (hereafter, "Parties' Joint Stipulation of Facts") is hereby sustained on the ground that said paragraphs are not relevant to a disposition of Petitioners' present petition for review.

3. The objection of Respondents to paragraph 25 of the Parties' Joint Stipulation of Facts is hereby overruled on the ground that said paragraph is relevant to a disposition of Petitioners' present petition for review because it serves to clarify Respondents' interpretation of Act 25 as set forth in Respondent Secretary of Education's August 16, 1991 budget reopening instructions.

4. The objection of Respondents to paragraph 15 of the Parites' Joint Stipulation of Facts is hereby overruled on the ground that said paragraph is relevant to a disposition of Petitioners' present petition for review and contains data which Respondents admitted at the October 7, 1991 oral argument on the Respondents' and Petitioners' cross-applications for summary relief.

5. The Petitioners' petition for review is hereby granted insofar as it requests declaratory relief because Petitioners have established the existence of an actual controversy ripe for adjudication, and the following declarations are made:

a. Newly enacted subsection 687(g)(6) of the Public School Code of 1949, *as amended,* added by section 1 of the Act of August 5, 1991, P.L. 219, Act. No. 91–25 (hereafter, Act 25), does not require Respondents to implement Act 25 by promulgating regulations, and Respondent Secretary's August 16, 1991 budget reopening instructions issued in response to subsection 687(g)(6) are not regulations and therefore do not have to comply with the statutory requisites for promulgation of regulations.

b. Newly enacted subsections 687(g)(2), 687(g)(3), and 687(g)(4) of the Public School Code of 1949, *as amended,* added by section 1 of Act 25, do not require a school district subject to Act 25 to include local employer retirement contribution savings in its determination of the amount of moneys which may be available for rebating (i.e., refunding/returning) to local taxpayers.

c. Newly enacted subsections 687(g)(2), 687(g)(3), and 687(g)(4) of the Public School Code of 1949, *as amended,* added by section 1 of Act 25, require a school district subject to Act 25 to determine the amount of moneys which may be available for rebating (i.e., refunding/returning) to local taxpayers by considering solely the amount by which the "additional State revenues" generated by the General Appropriation Act of 1991 exceed the State revenue figures used by the school district in the adoption of its original budget for fiscal year 1991–1992. Any low expenditure supplements provided to a school district under newly enacted subsections 2502.17 and 2502.18 of the Public School Code of 1949, *as amended,* added by section 10 of Act 25, are part of the "additional State revenues" generated by the General Appropriation Act of 1991 and must be included in a school district's determination of the amount of moneys which may be available for rebating to local taxpayers.

d. Newly enacted subsections 687(g)(2), 687(g)(3), and 687(g)(4) of the Public School Code of 1949, *as amended,* added by section 1 of Act 25, require a school district subject to Act 25 to rebate (i.e., refund/return) moneys to local taxpayers if the "additional State revenues" generated by the General Appropriation Act of 1991 exceed the State revenue figures used by the school district in the adoption of its original budget for fiscal year 1991–1992 unless the school district obtains a tax rebate waiver from the Department of Education on the ground that the excess of the "additional State revenues" over the original budget adoption State revenue figures is insufficient to permit a cost-effective preparation and mailing of adjusted tax notices.

e. Pursuant to newly enacted subsections 687(g)(3) and 687(g)(4) of the Public School Code of 1949, *as amended,* added by section 1 of Act 25, if a school district has obtained a tax rebate waiver from the Department of Education on the ground that the "additional State revenues" generated by the General Appropriation Act of 1991 do not exceed the school district's original budget adoption State revenue figures, the school district may use the excess of the "additional State revenues" generated by the General Appropriation Act of 1991 over the original budget adoption State revenue figures to meet its fiscal year 1991–1992 program needs.

6. The Petitioners' petition for review is hereby granted insofar as it requests that Respondents be enjoined from requiring a school district subject to Act 25 to seek a subsection 687(g)(3) tax rebate waiver from the Department of Education with respect to the school district's use of local employer retirement contribution savings. The Petitioners' petition for review is hereby denied to the extent that it requests other injunctive relief.